36 B.R. 717 (1984)
In re H & S TRANSPORTATION COMPANY INC., Debtor.
C. Bennett HARRISON, Jr., Trustee, Plaintiff,
v.
POINT LANDING FUEL CORPORATION, Defendant.
Bankruptcy No. 381-02803, Adv. No. 382-0458.
United States Bankruptcy Court, M.D. Tennessee.
January 20, 1984.
Samuel L. Felker, Nashville, Tenn., for defendant, Wood Resources Corp., formerly Point Landing Fuel Corp.
William Caldwell Hancock, Beth Roberts Derrick, Nashville, Tenn., for trustee.

MEMORANDUM
GEORGE C. PAINE, II, Bankruptcy Judge.
This matter is before the court on the defendant Point Landing Fuel Corporation's (hereinafter "Point Landing") motion for summary judgment. The trustee commenced this complaint to avoid and recover two preferential transfers from Point Landing.[1] After consideration of the evidence presented, the briefs of the parties, exhibits, stipulations, affidavits and the entire record, this court concludes that the motion for summary judgment should be GRANTED.
The following shall constitute findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.
The debtor H & S Transportation Company (hereinafter "H & S") filed a voluntary Chapter 11 petition in this court on September 4, 1981. This complaint is one of many filed by the trustee to recover alleged preferential transfers made by the debtor prior to the filing of its bankruptcy petition. In this particular proceeding, Point Landing had for an extended period of time supplied fuel, other goods and services to the debtor on credit. Point Landing received two payments from the debtor on this credit account within the 90 day period preceding the filing of the debtor's bankruptcy petition. The parties do not dispute that the debtor transferred to the defendant $27,933.92 by a check dated June 29, 1981, and $31,440.57 by a check dated August 13, 1981. During this time, Point Landing continued to deliver fuel and render services to H & S. The record reflects part of the cost of these goods and services was as follows:

 Date Amount
 July 7, 1981 - $ 16,320.29
 July 18, 1981 - 25,643.45
 July 25, 1981 - 19,492.42
 July 30, 1981 - 2,633.68
 August 3, 1981 - 27,400.30
 August 11, 1981 - 32,800.00
 August 26, 1981 - 42,614.37
 ___________
 $166,934.51

*718 Point Landing does not deny that the two aforementioned transfers satisfy the essential elements of a preferential transfer set forth in 11 U.S.C. § 547(b).[2] Point Landing does, however, allege that the subsequent advances given to the debtor constitute unsecured new value which should net out the amount of these preferential transactions under 11 U.S.C.A. § 547(c)(4) (West 1979), which provides as follows:
"(c) The trustee may not avoid under this section a transfer
. . . . .
(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor
(A) not secured by an otherwise unavoidable security interest; and
(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;. . . . "
In response, the trustee asserts that the new value advanced to the debtor was secured by maritime liens arising under 46 U.S.C. § 971 against vessels upon which the fuel and other supplies were placed.[3] The trustee has not shown, however, to which vessels these liens would attach or whether sufficient equity exists in any such vessel to satisfy these liens.
In any event, the trustee's contention is mooted by the May 23, 1983, affidavit of Rupert Surcouf, the Vice-President of Sales of Wood Resources Corporation, which is the successor of Point Landing. Mr. Surcouf stated that Point Landing instituted proceedings to assert its maritime lien of $166,934.51, the aforementioned "new value" advanced to H & S, against the M/V MARTHA TROTTER for fuel placed on board the MARTHA TROTTER. The MARTHA TROTTER was ultimately sold and the entire proceeds went to satisfy the first mortgage of Ford Motor Credit Company.
Under these circumstances, no factual issues remain which are controverted by the parties and therefore this proceeding can be resolved by summary judgment. Point Landing has clearly established that it advanced sufficient unsecured new value to the debtor to offset the value of the two preferential transfers under § 547(c)(4). The court will accordingly enter an order granting Point Landing's motion for summary judgment.
IT IS, THEREFORE, SO ORDERED.
NOTES
[1] When this complaint was originally filed, Irwin A. Deutscher was trustee in this case. Mr. Deutscher has since been succeeded by C. Bennett Harrison, Jr.
[2] 11 U.S.C.A. § 547(b) (West 1979) provides:

"(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made
(A) on or within 90 days before the date of the filing of the petition; or
(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer
(i) was an insider; and
(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
(5) that enables such creditor to receive more than such creditor would receive if
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title."
[3] 46 U.S.C.A. § 971 (Law. Co-op. 1979) provides:

"Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."