899 F.2d 1490
 58 USLW 2607, 22 Collier Bankr.Cas.2d 901,
20 Bankr.Ct.Dec. 599,
Bankr. L. Rep. P 73,323
 In re C-L CARTAGE CO., INC., Debtor.
Thomas E. RAY, Trustee, Plaintiff-Appellee/Cross-Appellant,
v.
CITY BANK AND TRUST COMPANY, Defendant-Appellant/Cross-Appellee,
Automotive Parts Exchange, et al., Defendants.
 Nos. 88-5556, 88-5557.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 8, 1989.
Decided April 3, 1990.
 
 Harold L. North, Jr. (argued), Ray & North, Chattanooga, Tenn., for plaintiff-appellee cross-appellant.
 B. Timothy Pirtle (argued), McMinnville, Tenn., for defendant-appellant cross-appellee.
 Before JONES and NORRIS, Circuit Judges, and McQUADE, District Judge.*
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 This appeal presents a question of statutory interpretation of first impression for our circuit: whether 11 U.S.C. Sec. 550(a)(1), read together with sections 547(b)(1) and (b)(4)(B), allows a trustee in bankruptcy to recover avoidable payments from non-insiders made during the extended preference period when those payments benefited insider creditors or guarantors. The bankruptcy court held that, while the debtor's payments to City National Bank and Trust were voidable preferences under 11 U.S.C. Sec. 547(b), payments to the bank outside of the ninety-day preference period were not recoverable by the trustee in bankruptcy, 70 B.R. 928. The district court affirmed on all grounds 113 B.R. 416. For the reasons stated in part III, we conclude that section 550(a)(1) permits such a recovery.
 
 I.
 
 2
 In March 1983, Carlos Foster, president of C-L Cartage Company ("Cartage"), the debtor, approached City Bank and Trust Company ("the bank") for financing. The bank refused to lend money to the company but agreed to make a personal loan to Carlos of $30,000, on the condition that his mother, Della Foster, cosign the note and secure it with certificates of deposit. In December 1983, the bank made a second personal loan to Carlos for $20,000, which Della Foster also cosigned. Carlos transferred the funds to Cartage to finance its business operations. No promissory notes were signed or delivered by Cartage to the Fosters.
 
 
 3
 On March 2, 1984, Cartage filed for reorganization under Chapter 11 of the Bankruptcy Code. That action was later converted to a Chapter 7 liquidation in December 1984, and a trustee was appointed.
 
 
 4
 Within the year preceding the filing of the bankruptcy petition, Cartage made nine payments of $1,399.31 each on the first loan. Six were made by checks payable directly to the bank, while three were made by checks payable to Della Foster who, in turn, endorsed them over to the bank. Two of the nine payments were within the ninety days preceding bankruptcy. On the second loan, Cartage paid $957.45 directly to the bank, within ninety days of the filing of the petition.
 
 
 5
 The parties have stipulated that Cartage was insolvent when these loan payments were made, and the bank concedes that the Fosters were insiders within the meaning of 11 U.S.C. Sec. 547(b)(4)(B). In characterizing the loan transactions for the purpose of applying section 547(b), both the bankruptcy and district courts concluded that either the bank loaned the money to the Fosters who, in turn, loaned the money to Cartage, or the bank loaned the money directly to Cartage with the Fosters as an artificial conduit used to guarantee the loan. Under either view, the district court concluded that the Fosters were "creditors" of Cartage within the meaning of 11 U.S.C. Sec. 101(9)(A) because they had an existing or contingent claim against the company. The district court rejected the Fosters' argument that the transfer of the loan proceeds to Cartage was a capital contribution.
 
 
 6
 Because the Fosters were "creditors," both courts concluded that the payments to the bank were "to or for the benefit of creditors" within section 547(b)(1) and were therefore voidable preferences. In interpreting section 550(a)(1), however, the district court concluded that "equitable considerations" prevented the recovery of payments made to the non-insider bank during the extended preference period though such payments benefited the Fosters as insider creditors.
 
 
 7
 The bank appeals the district court's determination that the Fosters were creditors within the meaning of the code, and argues that Cartage's payments do not otherwise meet section 547 requirements for voidable preferences. The trustee cross-appeals arguing that section 550(a)(1) permits recovery of payments from the bank during the extended preference period when such payments benefited insider creditors.
 
 II.
 
 8
 The bankruptcy code attempts to ensure that all creditors similarly situated receive equal treatment, by allowing the trustee to recover certain payments or transfers of property which prefer some creditors over others. To that end, 11 U.S.C. Sec. 547(b) provides that the trustee, as the representative of the general creditors, may avoid certain preferential transfers to particular creditors made within a specified time before the date of filing the bankruptcy petition.[1]
 
 
 9
 The district court concluded that the Fosters were "creditors" of Cartage by virtue of their having transferred to Cartage the proceeds from the two loans, with the intention that Cartage would repay the bank. "Creditor" is defined broadly in 11 U.S.C. Sec. 101(9)(A) as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." "Claim" is likewise defined broadly in section 101(4)(A) as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."On appeal, the bank contends that the Fosters were not creditors of Cartage because no promissory notes were signed by Cartage and delivered to the Fosters. It argues that the transfer of the loan proceeds was a capital contribution and not debt. Although no promissory notes were delivered to the Fosters, both the bankruptcy and district courts found that the Fosters had an expectation that Cartage would make the monthly payments to the bank on their behalf, either directly or indirectly. Cartage did, in fact, make six payments of $1,399.31 directly to the bank and three payments to Della, which were endorsed over to the bank. Fixed periodic repayments each month to the bank to discharge its obligations to the Fosters suggests that the Fosters had a debt rather than an equity relationship with Cartage.
 
 
 10
 The bank next contends that the district court found a suretyship in violation of Tennessee's statute of frauds when it found that "Carlos Foster intended that Cartage would repay its loan debts to the bank." The argument misconstrues the court's finding. The district court did not find that Cartage guaranteed the Fosters' loan from the bank, but that Cartage discharged its own debt to the Fosters by making payments directly to the bank. The discharge of one's own debt by paying a third party does not require a signed writing. The bank also argues that because the Fosters were not listed as creditors in the bankruptcy petition, they cannot be creditors of Cartage. While failing to list the Fosters as creditors in the bankruptcy petition may deny them relief as part of the pool of general creditors, it is not dispositive of their status as creditors in the first instance.
 
 
 11
 Whether viewed as creditors or guarantors, the Fosters fall within the broad definition of "creditor" in section 101(9)(A) since they have a real or contingent "claim" against Cartage. Accordingly, the finding that the Fosters were creditors of Cartage within the meaning of section 547(b)(1) was not clearly erroneous. Because they were creditors, Cartage's payments to the bank discharging its own liability to the Fosters were "to or for the benefit of a creditor" within the meaning of section 547(b)(1).
 
 
 12
 The remaining statutory requirement to classify these payments as voidable preferences is contained in section 547(b)(5). That subsection is directed at transfers which enable creditors to receive more than they would have received had the estate been liquidated under Chapter 7 and the disputed transfer not been made. Payments to a creditor who is fully secured are not preferential since the creditor would receive payment up to the full value of his collateral in a Chapter 7 liquidation. Payments to an unsecured or undersecured creditor, however, are preferential.
 
 
 13
 The bank claims its loans to the Fosters are fully secured by four certificates of deposit and security interests in two trucks. The "creditor" contemplated by section 547(b)(5), however, is the same referred to in subsections (b)(1) and (b)(4) and, in this case, refers to the Fosters. Because the Fosters' loans to Cartage (rather than the bank's loans to the Fosters) are unsecured, the Fosters received more than they would have received in a Chapter 7 liquidation and therefore the payments fall within the transfers described by section 547(b)(5). Having met all the requirements of section 547(b), the nine payments on the first loan and the single payment on the second loan are avoidable by the trustee in bankruptcy.
 
 III.
 
 14
 11 U.S.C. Sec. 547 specifies which transfers the trustee may avoid. 11 U.S.C. Sec. 550, however, determines from whom the trustee may recover these voidable transfers or preferences. Section 550(a)(1) provides that these voidable transfers may be recovered from "the initial transferee or the entity for whose benefit such transfer was made."[2]
 
 
 15
 "Transferee" is not defined by the code, but transfer is defined broadly in 11 U.S.C. Sec. 101(40) to include any disposition of an interest in property.[3] The bank concedes it is a transferee under this definition but contends that it is not the initial transferee and that recovery should be limited to the Fosters.
 
 
 16
 A literal reading of section 550(a)(1), together with sections 547(b)(1) and (b)(4)(B), permits recovery from an outsider transferee for transfers made during the extended preference period when the beneficiary of the transfers is an insider creditor or an insider guarantor. This result flows directly from an application of the unambiguous statutory language. A creditor or guarantor of the bankrupt is a creditor within the meaning of section 547(b) because he holds a claim or contingent claim against the debtor under sections 101(9) and 101(4)(A). A bankrupt debtor's payments to a lender "benefit" the insider creditor within the meaning of section 547(b)(1) by discharging his existing or potential liability to the lender. Transfers which benefit insider creditors are subject to an extended preference period of one year under section 547(b)(4)(B). Finally, section 550(a)(1) allows the recovery of these transfers from the initial transferee and section 550, unlike section 547, makes no distinction on its face between insiders and outsiders.
 
 
 17
 Citing a leading commentator (4 Collier on Bankruptcy, p 550.02 at 550-57), the district court found that it would be inequitable to permit the trustee to recover payments made to a non-insider bank during the extended preference period.
 
 
 18
 It might be argued that a literal application of section 550(a)(1) penalizes a lender for seeking the additional protection of an insider guaranty. But for the guaranty, the debtor's payments to the lender do not benefit the insider by reducing his contingent liability. Bankruptcy courts, however, cannot use equitable principles to disregard unambiguous statutory language. Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"); Levit v. Ingersoll Rand Financial Corp., 874 F.2d 1186, 1197-98 (7th Cir.1989); Official Committee v. Mabey, 832 F.2d 299, 301-02 (4th Cir.1987).
 
 
 19
 Other courts have adopted what has been dubbed as the "two-transfer" theory, which treats the single payment as two separate and independent transfers since both the insider and the outsider separately benefit from the single payment. See Goldberger v. Davis Jay Corrugated Box Corp. (In re Mercon Industries), 37 B.R. 549 (Bankr.E.D.Pa.1984); Levit v. Melrose Park Nat'l Bank (In re V.N. Deprizio), 58 B.R. 478, 481 (Bankr.N.D.Ill.1986), rev'd sub nom. Levit v. Ingersoll Rand Financial Corp., 874 F.2d 1186 (7th Cir.1989). Under the two-transfer theory, section 547(b) gives the trustee the power to avoid the extended preference period insider "transfer" but not the separate and independent benefit or transfer to the outsider. The approach incorrectly equates "transfer" with "benefit received." The code, however, equates transfer with payments made. Levit, 874 F.2d at 1195.
 
 
 20
 Sections 547 and 550 both speak of a transfer being avoided; avoidability is an attribute of the transfer [debtor's payment] rather than of the creditor. While the lenders want to define transfer from the recipients' perspectives, the Code consistently defines it from the debtor's. A single payment therefore is one transfer, no matter how many persons gain thereby.
 
 
 21
 Id. at 1195-96. By creating two transfers from a single payment, the two-transfer theory adopts a "tortured construction of the statute." See Note, The Interplay Between Sections 547(b) and 550 of the Bankruptcy Code, 89 Colum.L.Rev. 530, 540 (1989).
 
 
 22
 We prefer a literal reading of the statute permitting recovery from non-insider transferees for payments made during the extended preference period which benefit insider creditors or guarantors. Insiders, using their knowledge and control over the debtor, have an incentive to cause the debtor to prefer particular outside creditors when the insiders themselves derive benefits from those payments. In this case, the Fosters, using their knowledge and control over Cartage, had an incentive to prefer the bank throughout the extended preference period since every payment Cartage made reduced the Fosters' liability to the bank. Favoring certain creditors over others similarly situated is precisely what sections 547 and 550 seek to prevent. A straightforward application of the statutory language is consistent with the policies these sections were enacted to further.
 
 
 23
 The bank was the "initial transferee" for six payments on the first loan and the single payment on the second loan because the payments were made directly payable to the bank from Cartage's account. The trustee may recover these payments under section 550(a)(1). The bank was the "immediate or mediate" transferee for the three payments payable to Della Foster and endorsed over to the bank. As a mediate transferee within section 550(a)(2), the bank may be able to claim the benefit of section 550(b)(1) defenses. Accordingly, this cause must be remanded for a determination of whether the bank is entitled to any of the section 550(b)(1) defenses.
 
 IV.
 
 24
 The decision of the district court is affirmed in part and reversed in part, and remanded for further proceedings according to law and consistent with this opinion.
 
 
 
 *
 The Honorable Richard B. McQuade, Jr., United States District Judge for the Northern District of Ohio, sitting by designation, participated in oral argument but, due to his resignation effective October 1, 1989, took no part in the opinion
 
 
 [1]
 Section 547(b) provides:
 (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor--
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made--
 (A) on or within 90 days before the date of the filing of the petition; or
 (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer--
 (i) was an insider; and
 (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer;
 (5) that enables such creditor to receive more than such creditor would receive if--
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 
 
 [2]
 Section 550, in relevant part, provides:
 (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
 (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
 (2) any immediate or mediate transferee of such initial transferee.
 (b) The trustee may not recover under section (a)(2) of this section from--
 (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
 (2) any immediate or mediate good faith transferee of such transferee.
 (c) The trustee is entitled to only a single satisfaction under subsection (a) of this section.
 
 
 [3]
 Transfer is defined in section 101(40) as
 every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property....
 11 U.S.C. Sec. 101(40). The comment to that section states that "[t]he definition of transfer is as broad as possible." See S.Rep. No. 95-989, 95th Cong., 2d Sess. 27, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5873, 5878.