939 F.2d 355
 1992 A.M.C. 358, 25 Collier Bankr.Cas.2d 62,
21 Bankr.Ct.Dec. 1491, Bankr. L. Rep. P 74,120
 In re H & S TRANSPORTATION COMPANY, INC., Debtor.
C. Bennett HARRISON, Jr., Trustee, Plaintiff-Appellant,
v.
BRENT TOWING COMPANY, INC.; United Liberty Life Insurance
Company, Defendants-Appellees.
 No. 90-5393.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 11, 1991.
Decided July 18, 1991.
 
 W. Gregory Miller (argued), Cornelius & Collins, Nashville, Tenn., for plaintiff-appellant.
 C. Bennett Harrison, Jr., trustee.
 Kevin E. Irwin, Keating, Muething & Klekamp, Cincinnati, Ohio, M. Taylor Harris, Gullett, Sanford, Robinson & Martin, Nashville, Tenn., Robert G. Sanker, Cincinnati, Ohio, for defendant-appellee.
 Before NELSON and SUHRHEINRICH, Circuit Judges, and HACKETT, District Judge.*
 SUHRHEINRICH, Circuit Judge.
 
 
 1
 Plaintiff trustee appeals the district court's decision denying his preference claims against towboat owner United Liberty Life Insurance Co. ("United") arising out of payments made by the debtor, H & S Transportation Co., Inc. ("H & S" or "debtor"), to fuel suppliers. For the reasons stated below, we affirm the district court's judgment in favor of United.
 
 I. FACTS
 
 2
 United owned the towboat M/V VOLUNTEER STATE.[1] Inland Transportation Company ("Inland") chartered the M/V VOLUNTEER STATE from United and in turn hired debtor to operate the towboat for $2,750 per day plus expenses such as fuel supplies. As H & S transported the goods along the water-way, it purchased fuel for the M/V VOLUNTEER STATE on credit from a number of maritime fuel suppliers including: Point Landing Fuel Co. ("Point Landing"); St. Louis Fuel and Supply Co. ("St. Louis Fuel"); Helena Fuel and Harbor Service, Inc. ("Helena Fuel"); and Mobil Oil Corporation ("Mobil Oil"). The fuel vendors acquired statutory liens under 46 U.S.C. Sec. 971[2] against the M/V VOLUNTEER STATE pursuant to each credit transaction. Each section 971 lien on the M/V VOLUNTEER STATE would be automatically extinguished when and if debtor paid its outstanding fuel debts to the fuel suppliers.
 
 II. PROCEDURAL HISTORY
 
 3
 H & S filed a Chapter 11 bankruptcy petition on September 4, 1981. Thereafter, the trustee initiated separate adversary proceedings against each of the fuel suppliers and United to recover, inter alia, debtor's payments of $149,586.98 made to the fuel suppliers for fuel purchases for the M/V VOLUNTEER STATE during the 90 days prior to debtor's bankruptcy, as avoidable preferences under 11 U.S.C. Secs. 547(b) and 550(a).
 
 
 4
 With regard to the separate proceedings brought against Point Landing and St. Louis Fuel, the bankruptcy courts granted each suppliers' motion for summary judgment. Both courts held that the fuel suppliers provided "new value" to the debtor subsequent to the preferential payments and, thus, such payments were not avoidable under section 547(c)(4).[3] See In re H & S Transp. Co., Inc., 36 B.R. 717, 718 (Bankr.M.D.Tenn.1984); In re H & S Transp. Co., Inc., 45 B.R. 233, 239 (Bankr.M.D.Tenn.1984). The trustee settled the preference claims brought against Helena Fuel and Mobil Oil prior to trial.
 
 
 5
 The trustee's preference claims against United were tried and, on February 17, 1987, the bankruptcy court held in favor of the trustee. In re H & S Transp. Co., Inc., 80 B.R. 441 (Bankr.M.D.Tenn.1987). On August 11, 1988, the district court reversed the bankruptcy court's decision on the grounds that United was not a "creditor" of H & S for the purposes of the Bankruptcy Code because no maritime liens had arisen against United's vessel. In re H & S Transp. Co., Inc., 90 B.R. 309 (M.D.Tenn.1988). The district court relied upon a provision in the towboat's charter agreement which prohibited Inland from allowing liens to rise against the vessel. This court reversed the district court's decision on June 23, 1989, ruling that statutory liens arose on the M/V VOLUNTEER STATE as a matter of law; and remanded the case for consideration of the remaining issues raised by United in its initial appeal to the district court. In re H & S Transp. Co. Inc., 878 F.2d 381 (6th Cir.1989).
 
 
 6
 On February 5, 1990, the district court again reversed the bankruptcy court's February 17, 1987 decision, this time setting forth several alternative holdings, including that: (1) there was no evidence that the transfers diminished the debtor's estate and, thus, there was no "transfer" of debtor's property under section 547(b); (2) since two prior bankruptcy decisions had determined that the payments made by H & S were not avoidable as to certain fuel suppliers, they could not be recovered from United under section 550; and (3) even if the payments were preferences under section 547(b), they were not avoidable under section 547(c)(4) since United gave debtor "new value" subsequent to each transfer. In re H & S Transp. Co., Inc., 110 B.R. 827 (M.D.Tenn.1990). This appeal followed.
 
 
 7
 The trustee's principal arguments are as follows: (1) that the district court erred in allowing United to invoke the defense under Sec. 547(c)(4) used by Point Landing and St. Louis Fuel in their successful summary judgment motions; (2) that even if United is allowed to assert such a defense, the district court erred in barring all of the trustee's preferential claims when $60,286.86 of the transfers went to the fuel suppliers who settled with trustee and therefore never established any "subsequent new value" defenses; (3) that the district court erred by recognizing a "subsequent new value" defense on the basis of the creation of new maritime liens against the M/V VOLUNTEER STATE; (4) that the district court erroneously added an additional element to the requirements of 11 U.S.C. Sec. 547 by requiring the trustee to prove that the alleged preferential transfer "diminished the estate" of the debtor; and (5) that the district court erred in holding that there was no diminution of the estate when it is undisputed that debtor transferred $149,586.90 of cash assets to the fuel suppliers.
 
 III. DISCUSSION
 
 8
 The statutes which govern our analysis are 11 U.S.C. Sec. 547(b) & (c) and 11 U.S.C. Sec. 550(a)(1). The Code specifically "separates the identification of avoidable transfers (Sec. 547) from the identification of those who must pay (Sec. 550)...." Levit v. Ingersoll Rand Financial Corp., 874 F.2d 1186, 1196 (7th Cir.1989). Section 547 sets forth the conditions under which the trustee may avoid certain transfers of debtor's property for the benefit of the creditor. Section 547(b) provides that the trustee may avoid any transfers of debtor's property made "to or for the benefit of a creditor ... on or within 90 days before the date of the filing of the petition."[4] Sections 547(c)(1) & (4) then set forth certain exceptions which preclude the trustee from avoiding transfers in which "new value" is given to the debtor either contemporaneous with or subsequent to the alleged preferential transfer.[5] If it is determined that the transfer is a preference under section 547(b) and none of the exceptions under section 547(c) apply, we then look to section 550(a)[6] to determine to whom the trustee may look for recovery of the property. Finally, although more than one creditor may be held responsible for a single avoidable transaction under section 550(a), such a recovery is subject to the trustee's right to only a single satisfaction of each preference claim. 11 U.S.C. Sec. 550(c).
 
 
 9
 The trustee argues that the district court erred in allowing United to invoke the "subsequent new value" defense of the fuel suppliers who were the initial transferees of the payments from H & S. This argument requires us to explore the relationship between United and debtor, and between United and the fuel suppliers.
 
 
 10
 As noted above, the trustee may avoid the transfer of an interest of the debtor to or for the benefit of the creditor. 11 U.S.C. Sec. 547(b)(1). A creditor is defined under the Code as an: "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. Sec. 101(10)(A). A "claim" is defined as any "right to payment, whether or not such right is ... liquidated, unliquidated, fixed, [or] contingent...." 11 U.S.C. Sec. 101(5)(A). Because there may be more than one claim arising out of a single transaction, there may be more than one creditor in relation to a single transaction. See, e.g., In re C-L Cartage Co., 899 F.2d 1490 (6th Cir.1990) (in guarantor/guaranty context, both are "creditors" under 11 U.S.C. Sec. 101(10)(A) for purposes of section 547(b)).
 
 
 11
 Each fuel supplier was a "creditor" as defined under section 101(10)(A), since each alleged preferential payment was made pursuant to debtor's outstanding debts (i.e. claims) on its fuel purchases. Further, United was also a "creditor" as defined under section 101(5)(A) & (10)(A) with regard to each fuel purchase between debtor and the fuel suppliers, since each transaction gave rise to the following contingent indemnity claim against the debtor: if the debtor failed to pay its fuel debt, the fuel supplier had a right to execute its statutory liens on United's towboat, the M/V VOLUNTEER STATE; and if any fuel supplier had executed on such a lien, United would have had a right of indemnity from debtor. Compare In re Finn, 909 F.2d 903, 905 n. 2 (6th Cir.1990) (guarantor of debtor's loan is a "creditor" by virtue of his right to reimbursement from debtor). See also 4 Collier on Bankruptcy Sec. 547.04(1991) ("A guarantor or surety for the debtor ... will be a creditor under the Code because the guarantor holds a contingent claim against the debtor that becomes fixed when the guarantor pays the creditor whose claim was guaranteed or insured").
 
 
 12
 Section 550(a) provides that the trustee may recover from the initial transferee or any immediate or mediate transferee "to the extent that a transfer is avoided under section ... 547...." Thus, according to the literal language of the statute there must be an avoidable transfer before there can be recovery by the trustee pursuant to section 550(a). With respect to Point Landing and St. Louis Fuel, the trustee's right to avoid a transfer was defeated by the subsequent new value defense of section 574(c)(4). Therefore, with respect to the transfers to these fuel suppliers, section 550(a) never comes into play. As for Helena Fuel and Mobil Oil with whom the trustee settled, it is clear that the trustee has received its entitlement to only a single satisfaction under subsection (a). 11 U.S.C. Sec. 550(c).
 
 
 13
 This interpretation is consistent with the "single transfer" theory recognized in another context[7] by this circuit and applied by the district court. The bankruptcy court in this case, in rejecting United's argument that it was entitled to defend the action by invoking the suppliers' new value defenses, relied upon a "two-transfer" theory; namely that under section 550, two preferential transfers may result from one transaction and that each "transfer" must be analyzed separately for purposes of determining whether a trustee may recover against more than one creditor. The district court reversed the bankruptcy court's ruling in this regard, relying on the reasoning of the Seventh Circuit in Levit, 874 F.2d 1186:
 
 
 14
 The two-transfer approach equates "transfer" with "benefit received". Both Lender and Guarantor gain from payment, and each receives a "transfer" to the extent of the gain. The Code, however, equates "transfer" with payments made. Section 101(50) ... says that a transfer is a disposition of property. Sections 547 and 550 both speak of a transfer being avoided; avoidability is an attribute of the transfer rather than of the creditor. While the lenders want to define transfer from the recipients' perspectives, the Code consistently defines it from the debtor's. A single payment therefore is one "transfer", no matter how many persons gain thereby.
 
 
 15
 Levit, 874 F.2d at 1195-96 (emphasis added); In re H & S Transp. Co., 110 B.R. at 831. This court recently adopted the Levit analysis in C-L Cartage, 899 F.2d 1490. See also In re Robinson Bros. Drilling, Inc., 892 F.2d 850 (10th Cir.1989). Although each of those cases involved insider guarantors within the meaning of 11 U.S.C. Sec. 547(b)(4)(B), the discussion of the term transfer is not limited to that subsection and applies with equal force in this context.
 
 
 16
 The relationship between United and the fuel suppliers also dictates this result. By virtue of the statutory lien, United is subrogated to the rights of the fuel suppliers. "Legal subrogation ... arises out of a condition or relationship by operation of law where a person having a liability or a right ... pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditors whom he has paid." Third Nat'l Bank, in Nashville v. Highlands Ins. Co., 603 S.W.2d 730, 732 (Tenn.1980) (quoting 83 C.J.S. Subrogation Sec. 3a). As subrogee of the fuel suppliers, United succeeds to the rights of the creditor in relation to the debt. Castleman Constr. Co. v. Pennington, 432 S.W.2d 669, 674 (Tenn.1968).
 
 
 17
 Thus, United, as subrogee, is clearly entitled to assert the successful new value defense of the fuel supplier Point Landing and St. Louis Fuel. Further, because United also stands in the shoes of Helena Fuel and Mobil Oil, res judicata bars the trustee from seeking further relief as to these fuel suppliers.
 
 
 18
 In the alternative, we also agree with the district court's conclusion that United was entitled to assert in its own right the subsequent new value defense under section 547(c)(4).[8] The district court stated:
 
 
 19
 United gave new value by virtue of the debtor's continued operation of the VOLUNTEER STATE during the 90-day preference period. H & S's operation of the vessel resulted in over $390,000 worth of new liens for fuel purchased on credit by H & S. If the extinguishing of maritime liens was a benefit to United and diminished the debtor's estate, then the creation of new liens as security for H & S's new fuel purchased must be new value.
 
 
 20
 110 B.R. at 832.
 
 
 21
 It is undisputed that debtor paid certain of its fuel debts to the fuel suppliers in order to purchase new fuel during the 90 day preference period. It is also undisputed that new liens were created on United's towboat with each new credit transaction between debtor and the fuel suppliers. Because the new credit enabled debtor to continue purchasing fuel on credit from the fuel suppliers during the 90 day preference period, we agree with the district court's conclusion that the $390,000 worth of new liens created were "new value to or for the benefit of the debtor."[9]
 
 
 22
 Given our disposition of this case, we need not address the trustee's remaining arguments. For all the foregoing reasons, the judgment of the district court is
 
 
 23
 AFFIRMED.
 
 
 
 *
 The Honorable Barbara K. Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The trustee's claims against the other defendant-appellee, Brent Towing Co., Inc. ("Brent"), were settled during the pendency of this appeal and that portion of the appeal has been voluntarily dismissed
 
 
 [2]
 Section 971, which was in effect at the time of the alleged preferential transfers, provides:
 Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.
 46 U.S.C. Sec. 971 (Repealed Pub L. 100-710, Nov. 23, 1988) (emphasis added).
 
 
 [3]
 St. Louis Fuel and Point Landing both subsequently brought an in rem action in admiralty against United's boat, the M/V VOLUNTEER STATE, based upon maritime liens which had attached to the boat as a result of the debtor's unpaid fuel bills. In order to obtain a dismissal of the lawsuits and free the boat from the threat of attachment, United paid Point Landing and St. Louis Fuel $267,682.33 and $242,640.52, respectively
 
 
 [4]
 Section 547(b) provides, in relevant part:
 (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made--
 (A) on or within 90 days before the date of the filing of the petition;
 ... and
 (5) that enables such creditor to receive more than such creditor would receive if--
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 11 U.S.C. Sec. 547(b) (emphasis added).
 
 
 [5]
 Sections 547(c)(1) & (4) states as follows:
 (c) The trustee may not avoid under this section a transfer--
 (1) to the extent that such transfer was
 (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
 (B) in fact a substantially contemporaneous exchange;
 (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor--
 (A) not secured by an otherwise unavoidable security interest; and
 (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;
 11 U.S.C. Sec. 547(c)(1) & (4).
 
 
 [6]
 Section 550 provides:
 (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b) or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
 (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
 (2) any immediate or mediate transferee of such initial transferee.
 11 U.S.C. Sec. 550(a)(1) & (2).
 
 
 [7]
 The "single transfer" theory has been adopted by this circuit in the situation where a trustee has attempted to avoid a transfer to a non-insider creditor which benefits an insider guarantor. The preference recovery period for a transfer to an insider is one year, in contrast to the 90-day period for non-insiders. 11 U.S.C. Sec. 547(b)(4)(B). See In re C-L Cartage Co., Inc., 899 F.2d 1490 (6th Cir.1990). In that case, we examined the issue of "whether 11 U.S.C. Sec. 550(a)(1), read together with sections 547(b)(1) and (b)(4)(B), allows a trustee in bankruptcy to recover avoidable payments from non-insiders made during the extended preference period when those payments benefitted insider creditors or guarantors." Id. at 1491. We held that a literal reading of the statutes permitted recovery from outsider transferees for transfers made during the extended performance period which benefit inside creditors or guarantors. See also Levit v. Ingersoll Rand Financial Corp., 874 F.2d 1186 (7th Cir.1989) (insider guarantor/non-insider lender context)
 C-L Cartage is distinguishable from the instant case in that here there is no "insider" within the meaning of 11 U.S.C. Sec. 547(b)(4)(B). See also 11 U.S.C. Sec. 101(31)(A).
 
 
 [8]
 The trustee's argument that he never had an opportunity to develop evidence on this point is not persuasive, because all of the facts were stipulated by the parties. Moreover, as noted by the district court, United raised the section 547(c)(4) defense in the pretrial order, albeit using different facts; and furthermore, deciding the new value defense did not require the court to make any independent findings of fact
 
 
 [9]
 Significantly, these subsequent fuel purchases were ultimately paid, not by the debtor, but by United in order to discharge the liens and free the M/V VOLUNTEER STATE from the threat of attachment