**In re SOUTHWEST EQUIPMENT RENTAL, INC., d/b/a Southwest Motor Freight, Debtor.**

**C. Kenneth STILL, Trustee in Bankruptcy, Plaintiff,**

v.

**CONGRESS FINANCIAL CORPORATION (SOUTHERN), Defendant.**

**Bankruptcy No. 1–88–00033.
Adv. No. 1–88–00208.**

United States Bankruptcy Court, E.D. Tennessee.

Feb. 18, 1992.

Gary R. Patrick & Cara J. Alday of Patrick, Beard & Richardson, Chattanooga, Tenn., for plaintiff.

Steve Beckham of Weems & Beckham, Chattanooga, Tenn., C. Edward Dobbs & Jack C. Basham, Jr., of Parker, Hudson, Rainer & Dobbs, Atlanta, Ga., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Chief Judge.

The trustee in bankruptcy for Southwest Equipment Rental brought this suit against Congress Financial Corporation to recover alleged preferential transfers. For convenience, the court will refer to Southwest Equipment Rental as Southwest and to Congress Financial as CF.

Southwest operated a trucking company. CF made a series of operating loans to Southwest. To secure the loan debt, Southwest gave CF a security interest in Southwest's accounts receivable. Southwest's president also guaranteed the debt to CF.

This opinion deals with CF's first motion for summary judgment. The main question concerns CF's possible defense under Bankruptcy Code § 547(c)(5). 11 *U.S.C.A.* § 547(c)(5) (West Supp.1991).

I. CF's SECURITY INTEREST IN SOUTHWEST'S ACCOUNTS RECEIVABLE AND THE DEFENSE UNDER § 547(c)(5)

A. THE BASICS OF A SECURITY INTEREST IN ACCOUNTS RECEIVABLE AND THE DEFENSE IN § 547(c)(5)

Section 547(b) sets out the elements of a preferential transfer. 11 *U.S.C.A.* § 547(b) (West 1979 & Supp.1991). Section 547(c) sets out exceptions or defenses. 11 *U.S.C.A.* § 547(c) (West 1979 & Supp.1991). In particular, § 547(c)(5) provides a defense for a creditor, such as CF, that had a perfected security interest in the debtor's accounts receivable.

When the creditor has a perfected security interest in accounts receivable generally, the transfer of one account re-

ceivable occurs when the account comes into existence. 11 *U.S.C.A.* § 547(e) (West 1979 & Supp.1991); *Pineo v. Charley Brothers Co. (In re J.A.S. Markets, Inc.),* 113 B.R. 193, 20 Bankr.Ct.Dec. 708, 23 Collier Bankr.Cas.2d 116 (Bankr.W.D.Pa.1990); Vern Countryman, *The Concept of a Voidable Preference,* 38 Vand.L.Rev. 713, 790–794 (1985).

There were numerous transfers like this from Southwest to CF during the year before Southwest's bankruptcy. Section 547(c)(5) provides a method for determining the amount of preference, if any, that results from such transfers during the preference period. The amount of the preference is the secured creditor's improvement in position during the preference period.

### B. The transfers of accounts receivable to CF as an insider preference to Southwest's president

■ Since Southwest's president guaranteed the debt to CF, the transfers may have been preferences to him also. He had a potential claim against Southwest for any amount he had to pay CF under the guarantee; this made him a creditor for purposes of the preference statute. 11 *U.S.C.A.* § 101(5) & (10) (West Supp.1991). The transfers of accounts receivable to CF benefited him by reducing his potential debt to CF and his potential claim against Southwest for reimbursement.

Southwest's president was also an insider. 11 *U.S.C.A.* § 101(31) (West Supp. 1991). The preference period for an ordinary, outside creditor is 90 days before bankruptcy, but the preference period for an inside creditor is one year before bankruptcy. 11 *U.S.C.A.* § 547(b)(4)(A) & (B) (West Supp.1991). Thus, the transfers of accounts receivable to CF *within a year before Southwest's bankruptcy* could have resulted in an insider preference to Southwest's president. *Levit v. Ingersoll Rand Financial Corp. (In re V.N. Deprizio Constr. Co.),* 874 F.2d 1186, 19 Bankr.Ct. Dec. 574, 22 Collier Bankr.Cas.2d 36 (7th Cir.1989).

### C. CF's possible liability under § 550(a)(1) for an insider preference to Southwest's president

■ Section 550(a)(1) does not use the word "creditor" to describe who is liable to the bankruptcy trustee for an avoidable preference. It says that the bankruptcy trustee can recover from either the "initial transferee" or the "entity benefited by the transfer." 11 *U.S.C.A.* § 550(a)(1) (West 1979 & Supp.1991).

This seems to divorce liability completely from avoidability. If the transfer is an avoidable preference to the creditor benefited by the transfer, then the initial transferee is liable. If the transfer is an avoidable preference to the initial transferee, then the creditor benefited by the transfer is liable.

This view of § 550(a)(1) leads to the argument that CF can be liable for transfers to it within a year before bankruptcy to the extent they resulted in an insider preference to CF's president. Even if CF was an outside creditor, it loses the protection of the 90–day preference period. It can be liable for transfers up to a year before Southwest's bankruptcy.

The Seventh Circuit Court of Appeals accepted this argument in the *Deprizio* case. The court held that the outside creditor, as the initial transferee, could be liable for transfers up to a year before bankruptcy because they benefited the inside creditor who guaranteed the debt. *Levit v. Ingersoll Rand Financial Corp. (In re V.N. Deprizio Constr. Co.),* 874 F.2d 1186, 19 Bankr.Ct.Dec. 574, 22 Collier Bankr. Cas.2d 36 (7th Cir.1989); *accord, Lowrey v. First National Bank (In re Robinson Bros. Drilling, Inc.),* 97 B.R. 77 (W.D.Okla.1988), *aff'd, Manufacturers Hanover Leasing Corp. v. Lowrey (In re Robinson Bros. Drilling, Inc.),* 892 F.2d 850, 21 Collier Bankr.Cas.2d 1405 (10th Cir. 1989).

The law is the same in this circuit. The Sixth Circuit faced the question in *C–L Cartage* and reached the same result. *Ray v. City Bank & Trust Co. (In re C–L Cartage Co., Inc.),* 899 F.2d 1490, 20 Bankr.Ct.Dec. 599, 22 Collier Bankr.Cas.2d

901 (6th Cir.1990). CF can be liable for transfers to it within a year before bankruptcy because an insider, Southwest's president, guaranteed its debt to CF.

### D. WHETHER CF CAN USE § 547(c)(5) AS A DEFENSE TO THE CLAIM AGAINST IT FOR AN INSIDER PREFERENCE TO SOUTHWEST'S PRESIDENT

■ The court has already explained the theory that § 550(a)(1) divorces avoidability of a transfer from liability for the transfer. This theory leads to the argument that CF's security interest does not necessarily give it a defense under § 547(c)(5).

The argument goes as follows. Under § 550(a)(1) the question is whether the transfers to CF within a year before bankruptcy resulted in an insider preference to Southwest's president; if they did, then CF is liable for the insider preference. Thus, CF must rely on the defenses of Southwest's president to prevent it from being liable for the insider preference to him. CF can use § 547(c)(5) as a defense only if Southwest's president could use it as a defense.[1]

In *Deprizio* the Seventh Circuit rejected this argument. The court said that the outside creditor could use its own defenses, even though the trustee was trying to hold it liable for the insider preference to the guarantor. *Levit v. Ingersoll Rand Financial Corp. (In re V.N. Deprizio Constr. Co.)*, 874 F.2d 1186, 1198–1200, 19 Bankr.Ct.Dec. 574, 22 Collier Bankr.Cas.2d 36 (7th Cir.1989).

This result does not follow a literal interpretation of § 550(a)(1), but it agrees with the Seventh Circuit's general explanation of *Deprizio*. The court said that it was merely extending the preference period for the outside creditor from 90 days to one year before bankruptcy. *Levit v. Ingersoll Rand Financial Corp. (In re V.N. Deprizio Constr. Co.)*, 874 F.2d 1186, 1195–1198, 19 Bankr.Ct.Dec. 574, 22 Collier Bankr. Cas.2d 36 (7th Cir.1989).

The trustee's summary of *Deprizio* agrees with this explanation of *Deprizio*. According to the trustee, *Deprizio* treated the outside creditor as an insider because the transfers benefited an insider.

Either way, the result is the same. The outside creditor is liable as the initial transferee only if the transfer is an avoidable preference to it, except the 90–day preference period is extended to one year.

Other courts have allowed the outside creditor to use its own defenses. *Cambridge Meridian Group, Inc. v. Connecticut National Bank (In re Erin Food Services, Inc.)*, 117 B.R. 21 (Bankr.D.Mass. 1990); *Mixon v. Mid–Continent Systems, Inc. (In re Big Three Transp., Inc.)*, 41 B.R. 16, 11 Collier Bankr.Cas.2d 142 (Bankr.W.D.Ark.1983).

Under this reasoning, CF can use its own defense under § 547(c)(5) without regard to whether Southwest's president could use the defense. However, the Sixth Circuit's decision in *C–L Cartage* causes a problem with following these cases.

The situation in *C–L Cartage* was essentially the same as in *Deprizio*. C–L Cartage made payments to the outside creditor, the bank. The trustee argued that the bank was liable for payments up to a year before bankruptcy because they preferred C–L Cartage's president. The Sixth Circuit agreed with *Deprizio* on this point; it held the bank liable for payments to it within a year before bankruptcy.

But the Sixth Circuit apparently disagreed with *Deprizio* on the question of what defenses an outside creditor can use. The bank argued that it could not be liable because the payments did not prefer it under § 547(b)(5). 11 *U.S.C.A.* § 547(b)(5) (West 1979). The bank relied on its security interest in certificates of deposit that belonged to the mother of C–L Cartage's president.

The Sixth Circuit said that the bank's defense was irrelevant because the question was whether the payments were an

---

**1.** Section 550 provides its own defenses for an initial transferee, but they do not appear to incorporate the preference defenses under § 547. 11 *U.S.C.A.* § 550(a)(1) (West 1979 & Supp.1991).

insider preference to C–L Cartage's president, not whether they were an insider preference to the bank. *Ray v. City Bank & Trust Co. (In re C–L Cartage Co., Inc.)*, 899 F.2d 1490, 1493, 20 Bankr.Ct.Dec. 599, 22 Collier Bankr.Cas.2d 901 (6th Cir.1990).

In the later case of *H & S Transportation,* the Sixth Circuit seems to have restricted this reasoning. *Harrison v. Brent Towing Co., Inc. (In re H & S Transp. Co., Inc.)*, 939 F.2d 355, 21 Bankr.Ct.Dec. 1491, 25 Collier Bankr.Cas.2d 62 (6th Cir.1991). H & S operated a leased towboat. When H & S bought fuel for the towboat on credit, the fuel supplier obtained a statutory lien on the towboat. This made the towboat owner a creditor of H & S. Furthermore, H & S's payments to the fuel supplier could have been preferences to both the fuel supplier and the towboat owner.

H & S's bankruptcy trustee sued the towboat owner to recover the payments to the fuel supplier as preferences to the towboat owner. The trustee argued that the defenses of the fuel supplier were irrelevant because the question was whether the payments were preferences to the towboat owner, not whether they were preferences to the fuel supplier.

The fuel supplier had the new value defense based on fuel sales to the debtor after the payments in question. 11 *U.S.C.A.* § 547(c)(4) (West 1979). These later fuel sales also created new liens on the towboat. The Sixth Circuit held that the new liens gave the towboat owner the new value defense in its own right and subrogated the towboat owner to the fuel supplier's new value defense.

More importantly, the Sixth Circuit said that the towboat owner could *not* be liable under § 550(a)(1) because the payments were not avoidable preferences to the fuel supplier. This meant that the fuel supplier could use its own new value defense if the trustee were trying to hold it liable for a preference *to the towboat owner*. This required the court to distinguish *C–L Cartage.*

The Sixth Circuit distinguished *C–L Cartage* on the ground that the creditor benefited by the payments was an insider in *C–L Cartage* (C–L Cartage's president) but an outsider in *H & S* (the towboat owner). *Harrison v. Brent Towing Co., Inc. (In re H & S Transp. Co., Inc.)*, 939 F.2d 355, note 7 at 359, 21 Bankr.Ct.Dec. 1491, 25 Collier Bankr.Cas.2d 62 (6th Cir. 1991).

The court can interpret the distinction to agree with *Deprizio:* generally the defendant under § 550(a)(1) can use its own defenses, but in cases such as *Deprizio* and *C–L Cartage,* the initial transferee who is an outside creditor cannot use the 90–day preference period as a defense; the preference period is extended to one-year because the transfers benefited an inside creditor.

This interpretation of *H & S* means that CF can use its own defense under § 547(c)(5), without regard to whether Southwest's president could use the defense. The only defense CF cannot use is the 90–day preference period. Of course, this interpretation of *H & S* clearly disagrees with the Sixth Circuit's reasoning in *C–L Cartage.* The court makes two points with regard to the reasoning in *C–L Cartage.*

First, the reasoning was not necessary for the Sixth Circuit to reach the same result. The security interest did not support the bank's alleged defense under § 547(b)(5). *Ray v. City Bank & Trust Co. (In re C–L Cartage Co., Inc.)*, 70 B.R. 928, 16 Collier Bankr.Cas.2d 766 (Bankr. E.D.Tenn.1987), *aff'd* 113 B.R. 416 (E.D.Tenn.1988), *aff'd in part, rev'd in part, Ray v. City Bank & Trust Co. (In re C–L Cartage Co., Inc.)*, 899 F.2d 1490, 20 Bankr.Ct.Dec. 599, 22 Collier Bankr.Cas.2d 901 (6th Cir.1990). If the Sixth Circuit had allowed the bank to use its security interest as a defense under § 547(b)(5), the result would have been the same. Thus, the Sixth Circuit in *H & S* could abandon its earlier reasoning in *C–L Cartage* without disturbing the result in *C–L Cartage.*

Second, these cases have all involved a single transfer that may have preferred two *creditors*—the "initial transferee" and the "entity benefited by the transfer." Suppose the court treats each creditor separately under § 547 to decide whether it

received an avoidable preference and then holds that § 550(a)(1) makes either creditor liable for the preference to the other. The trustee's recovery may be completely out of line with the harm to other creditors as measured by looking at the whole transaction.

This brings the court to the main reason for allowing CF to use its own defense under § 547(c)(5). The court sees no way to reach a fair and sensible result if it does not allow CF to use its security interest and § 547(c)(5) as a defense.

If the court ignores CF's security interest in deciding the amount of the insider preference, the court may reach a ridiculous result. Brad Godshall, et al., *Two Years Later: Eight Questions Left Unanswered (or Extremely Confused) by Deprizio*, 19 Calif.Bankr.L.J. 41 (1991). The trustee does not even argue that CF's security interest can be ignored.

Suppose the court does not ignore CF's security interest but uses some method other than § 547(c)(5) to measure the insider preference. For the 90 days before bankruptcy, the court would be using § 547(c)(5) to measure the ordinary preference to CF but some other method to measure the insider preference. This does not make sense when the trustee is trying to hold CF liable for both.

The creditors and their defenses cannot always be completely separated in cases such as *Deprizio, C–L Cartage, H & S*, and this case. When dealing with § 550(a)(1), the best course is to pay close attention to the facts of each case and to shy away from general rules. Section 550(a)(1) covers too many different fact patterns. *See, e.g., Kellogg v. Blue Quail Energy, Inc. (In re Compton Corp.)*, 831 F.2d 586, 16 Bankr.Ct.Dec. 1265, 17 Collier Bankr. Cas.2d 987 (5th Cir.1987) *reh'g granted*, 835 F.2d 584, 18 Collier Bankr.Cas.2d 273 (5th Cir.1988). This is the lesson of *C–L Cartage* and *H & S*.

The court concludes that *C–L Cartage* does not prevent CF from using its own defense under § 547(c)(5) even though the

trustee is attempting to hold CF liable for the insider preference to Southwest's president.

In the alternative, the court distinguishes *C–L Cartage* on the facts.[2] In *C–L Cartage* the bank's security interest did not support the alleged defense under § 547(b)(5), but CF's security interest does support a defense under § 547(c)(5).

The *H & S* decision suggests two more arguments for allowing CF to use its own defense under § 547(c)(5). CF can argue that Southwest's president would be subrogated to CF's security interest and defense under § 547(c)(5) if the trustee were trying to recover the insider preference from him. Second, CF can argue that the potential claim of Southwest's president against Southwest was, as a practical matter, secured by CF's security interest. *See H & S*, 939 F.2d 355, 21 Bankr.Ct.Dec. 1491, 25 Collier Bankr.Cas.2d 62 (6th Cir.1991).; T. Pitts, Jr., *Insider Guaranties and the Law of Preferences*, 55 Am.Bankr.L.J. 343, 357–358 (1981); 11 *U.S.C.A.* §§ 502(e) & 509 (West 1979 & Supp.1991).

In light of the court's earlier decision, it need not rule on either of these arguments. CF is entitled to use its security interest and § 547(c)(5) as a defense to the insider preference claim without regard to whether Southwest's president could do the same.

## II. SECTION 547(c)(5) APPLIED TO THE FACTS OF THIS CASE

Section 547(c)(5) provides that the amount of the preference is the secured creditor's improvement in position to the prejudice of the debtor's unsecured creditors. Improvement in position means a reduction in the unsecured portion of the debt.

For example, suppose the secured debt is $100,000 and the value of the collateral is $75,000 six months before bankruptcy. At the time of bankruptcy, the secured debt is $90,000 and the value of the collateral is $80,000. The unsecured portion of the debt has decreased from $25,000 to $10,000; the

---

**2.** The court will not try to distinguish the cases on the ground that the bank's defense in *C–L* *Cartage* was under § 547(b), whereas CF's defense is under § 547(c).

creditor has improved its position by $15,000.

■ The starting point for measuring improvement in position in this case is the beginning of the insider preference period one year before bankruptcy. 11 *U.S.C.A.* § 547(c)(5)(A)(ii) (West Supp.1991).

The trustee argues that the beginning point should be about six months before Southwest's bankruptcy, at the time the unsecured portion of the debt reached its highest amount (according to his calculations). This starting point would produce the largest possible preference, about $1,600,000 according to the trustee's calculations.

This argument assumes that § 547(c)(5) is not literally a defense for CF and the court can apply it only by analogy or out of necessity—as a way to measure the insider preference. Under this assumption, the court need not follow § 547(c)(5) exactly as written; in the interest of justice, the court can pick another starting point for measuring improvement in position.

The court has already decided that CF can use its security interest and § 547(c)(5) as a defense in its own right, without regard to whether Southwest's president could use it as a defense. Therefore, the court rejects the trustee's argument and will apply § 547(c)(5) as written.

The court can grant summary judgment to CF only if there is no genuine issue of material fact, and CF is entitled to judgment as a matter of law. *Fed.R.Bankr. Proc.* 7056(c) (Clark Boardman Callaghan, Norton Bankr.Code & Rules Pamph. 1991–1992).

■ The first question under § 547(c)(5) is whether the debt to CF was undersecured one year before bankruptcy. If the debt was fully secured or oversecured at that point, then there could not have been any improvement in position.

CF submitted the affidavit of George McCarthy, a vice-president of CF. He stated that the amount of the debt one year before Southwest's bankruptcy was about $5,800,000. The trustee has not disputed this amount. There is no genuine issue of material fact. *Fed.R.Bankr.Proc.* 7056(e) (Clark Boardman Callaghan, Norton Bankr. Code & Rules Pamph. 1991–1992).

Mr. McCarthy also stated in his affidavit that the value of the accounts receivable subject CF's security interest one year before bankruptcy was about $7,300,000. Mr. McCarthy did not explain how he valued the accounts receivable. However, the trustee has not challenged his valuation with contrary evidence. The court concludes that there is no genuine issue of material fact with respect to the value of the collateral one year before Southwest's bankruptcy. *Fed.R.Bankr.Proc.* 7056(e) (Clark Boardman Callaghan, Norton Bankr. Code & Rules Pamph. 1991–1992).

The trustee argues that no more than $7,000,000 of CF's debt could have been secured because the filed financing statement limited the secured debt to that amount. In light of the undisputed facts, this argument is not relevant to the alleged insider preference. Even if the secured debt was limited to $7,000,000, the debt was still oversecured at the beginning of the one-year preference period. Under § 547(c)(5) this means that there was no improvement in CF's position during the year before bankruptcy and no insider preference for the trustee to recover.

The court has treated CF as an outside creditor, instead of an insider, but it makes no difference to the result. If CF was an insider, it can use § 547(c)(5) as a defense, and there is still no insider preference for the trustee to recover from CF.

CF is entitled to summary judgment on the insider preference issue unless there is some other problem with its security interest. This brings up Count II of the trustee's complaint. In Count II the trustee alleges that CF changed its practices shortly before Southwest's bankruptcy; CF advanced Southwest just enough money to keep Southwest operating—to mislead other creditors into continuing to deal with Southwest—while it took most of Southwest's income to collect the debt to it. The trustee seeks to recover the amount by which CF reduced its debt during this time.

The trustee alleges that CF reduced the debt by about $5,000,000.

The trustee characterizes Count II as a claim for subordination of CF's security interest, but the trustee is really seeking a money judgment based on CF's actions under the financing agreement. The court does not see why this claim should prevent summary judgment on the insider preference claim. In any event, the summary judgment will not be final and appealable. The court can reconsider in light of any later decision with regard to the security interest. *Fed.R.Bankr.Proc.* 7054(b) (Clark Boardman Callaghan, Norton Bankr. Code & Rules Pamph. 1991–1992).

### III. THE ORDINARY PREFERENCE CLAIM AGAINST CF

CF can still be liable for an ordinary preference resulting from transfers of accounts receivable within 90 days before bankruptcy. The trustee alleges that CF improved its position by about $600,000 in the 90 days before bankruptcy. The court makes no decision with regard to this alleged preference.

### IV. SOUTHWEST'S PAYMENTS TO CF

■ CF also argued that the payments it received are protected by the defense in § 547(c)(2) for transfers in the ordinary course of business. 11 *U.S.C.A.* § 547(c)(2) (West Supp.1991).

Suppose that a creditor has a perfected floating security interest in accounts receivable and their proceeds. During the preference period the debtor transfers more accounts receivable to the secured creditor. The secured creditor collects the accounts receivable already subject to its security interest and keeps the money as payment on the secured debt. The payment is not a separate transfer that makes any difference to the debtor's other creditors. The transfer that makes a difference is the transfer that perfects the security interest.

If CF is talking about payments it collected from accounts receivable already subject to its perfected security interest, § 547(c)(2) is probably irrelevant. The only preference is the improvement in position under § 547(c)(5)—unless the trustee can avoid CF's security interest to a greater extent than allowed by § 547(c)(5). *Pineo v. Charley Brothers Co. (In re J.A.S. Markets, Inc.)*, 113 B.R. 193, 20 Bankr.Ct.Dec. 708, 23 Collier Bankr.Cas.2d 116 (Bankr. W.D.Pa.1990); Vern Countryman, *The Concept of a Voidable Preference*, 38 Vand.L.Rev. 713, 742–743, 798–799, footnote 437 (1985).[3]

Nevertheless, the court cannot grant summary judgment to CF with regard to the payments. The court's reasoning may not protect all the payments from the accounts receivable if the trustee succeeds in limiting CF's perfected security interest to $7,000,000. *Ford Motor Credit Co. v. Ken Gardner Ford Sales, Inc.*, 10 B.R. 632, 32 U.C.C.Rep.Serv. 1281 (Bankr.E.D.Tenn. 1981) *aff'd* 23 B.R. 743, 35 U.C.C. Rep.Serv. 1352 (E.D.Tenn.1982).

Furthermore, Southwest may have made payments to CF from sources other than the accounts receivable. In his affidavit, Mr. McCarthy said that almost all the payments came from the accounts receivable; he did not say that they all did.

Finally, the evidence presented by CF does not prove the payments were in the ordinary course of business. Mr. McCarthy said that the financing arrangement between CF and Southwest was normal or typical in the trucking business and that most of the payments came directly to CF from a lockbox that Southwest did not have access to or control over. These facts do not prove that the payments were in the ordinary course of business and according to ordinary business terms.

### V. CONCLUSION

The court will grant summary judgment to CF holding that it is not liable to the trustee for an insider preference as the

---

**3.** Section 547(c)(5) takes payments into account by using the amount of the secured debt as one factor in determining improvement in position.

 

result of transfers of accounts receivable from Southwest to CF within the year before Southwest's bankruptcy.

This memorandum constitutes findings of fact and conclusions of law. *Fed. R.Bankr.Proc.* 7052.

### ORDER

In accordance with the court's memorandum opinion entered this date, the court grants summary judgment to the defendant on the plaintiff's claim against the defendant for an insider preference under 11 *U.S.C.A.* §§ 547(b)(4)(B) & 550(a)(1). In particular, the court holds that the transfers of accounts receivable from the debtor, Southwest Equipment Rental, Inc., to the defendant within a year before bankruptcy did not result in an avoidable insider preference to the defendant, because the transfers did not improve the defendant's position under 11 *U.S.C.A.* § 547(c)(5).

In all other respects the defendant's first motion for summary judgment is denied.