### In re C–L CARTAGE COMPANY, INC., Debtor.

### Thomas E. RAY, Trustee, Plaintiff/Appellee,

### v.

### AUTOMOTIVE PARTS EXCHANGE, Industrial Tire, City Bank & Trust, Mercury Motor Express, Associates Commercial Corp., American National Bank, and Corroon & Black of Chattanooga, Inc., Defendants/Appellants.

Civ–1–87–190.
Bankruptcy No. 1–84–00334.
Adv. No. 1–85–0036.

United States District Court,
E.D. Tennessee, S.D.

March 25, 1988.

Harold L. North, Jr., Chattanooga, Tenn., for plaintiff.

B. Timothy Pirtle, McMinnville, Tenn., for defendant.

## MEMORANDUM

EDGAR, District Judge.

This case is before the Court on cross appeals from the March 11, 1987 decision of the Honorable Ralph H. Kelley, Chief United States Bankruptcy Judge for the Eastern District of Tennessee. 70 B.R. 928. The relevant facts, as determined by the bankruptcy court, are as follows:

On or before March 1983, Carlos Foster, the president of C–L Cartage Company, approached City Bank & Trust Company (the "bank") to obtain financing for his company. The bank refused to lend money to the corporation, and no written application was ever submitted by the corporation. Instead, Carlos Foster obtained a personal loan of $30,000 from the bank, and then put the money into the corporation as operating capital. Carlos Foster's mother cosigned the note for this loan, pledging as collateral three certificates of deposit totaling $31,379.98. In December 1983, Carlos Foster obtained a second personal loan for $20,000 which was also put into the corporation. Mr. Foster's mother also cosigned the second note. The second note was ostensibly secured by a fourth certificate of deposit and two trucks. The bankruptcy court found, however, that there was no fourth certificate of deposit and that the bank had failed to show that any claimed security interest in the two trucks was ever perfected.

Between April 1983 and February 1984, eleven monthly payments of $1,399.31 were made on the first note. Six of the payments were made by C–L Cartage directly to the bank. Three payments were made by C–L Cartage to Mr. Foster's mother, who in turn endorsed them to the bank. The remaining two payments were not made by C–L Cartage, either directly or indirectly.

Two monthly payments of $957.45 were made on the second note in January and March 1984. The first payment was made by C–L Cartage; the second payment was not.

At all times relevant to this appeal, C–L Cartage Company was insolvent. On March 2, 1984, the corporation filed a petition in bankruptcy for reorganization under Chapter 11. The reorganization was converted to a Chapter 7 liquidation and a trustee appointed in December 1984.

In the adversary proceeding below, the trustee sought to recover from the bank the ten note payments that were made by C–L Cartage Company, either directly, or indirectly via Mr. Foster's mother, in the year preceding the corporation's bankruptcy. The bankruptcy court held that the trustee could only recover from the bank those payments which were made by the corporation within 90 days of the bankruptcy. Both the trustee and the bank appeal, the bank arguing that it should not even have to repay the payments made within the 90 days, the trustee arguing that the bank should have to repay all payments made within a year of the bankruptcy.

██ Cross-appellants raise a number of challenges to the decision of the bankruptcy court, some factual and some legal. Factual determinations of the bankruptcy court are reviewed only for clear error. B.R. 8013. Legal conclusions are reviewed *de novo. See, e.g., Matter of Consolidated Bancshares, Inc.,* 785 F.2d 1249 (5th Cir. 1986). The Court shall address the various arguments *seriatim.*

### Discussion

The bank first argues that the bankruptcy court erred in finding that Carlos Foster and his mother were creditors of C–L Cartage and that the loans by the bank were under-secured.

As to the first claimed error, the bankruptcy court reasoned that Carlos Foster and his mother contributed the loan money to the corporation with the intent that the corporation would repay the loans, and that Mr. Foster and his mother were, consequently, unsecured creditors of the corporation. The bank does not explain what effect, if any, this claimed error had on the bankruptcy court's resolution of this case.

The Court believes it really did not affect the decision. There are, basically, two ways to look at the loan transactions: Either the bank loaned the money to Mr. Foster who in turn loaned the money to C–L Cartage, or the bank loaned the money directly to C–L Cartage using a dummy third-party transaction with Mr. Foster and his mother as guarantors.[1] The bankruptcy court seems to accept both views at different points in its opinion. Either view yields the same result under the bankruptcy laws, namely, the trustee can recover from the creditor or initial transferee all preferential payments made within 90 days of bankruptcy. In any case, the bankruptcy court's determination that Mr. Foster and his mother were C–L Cartage creditors is not clearly erroneous. The bank's major support for the argument that this determination was erroneous, T.C.A. § 29–2–101(2), which requires a writing to enforce a promise to pay the debt of another, is inapplicable. As the bankruptcy court pointed out (Court File No. 18 at 13), C–L Cartage promised to pay its *own* debt to Mr. Foster and his mother by paying their debt to the bank.

As to the second claimed error, that the two notes were under-secured, the bankruptcy court reasoned that the two loans totaling $50,000 and were secured only by three certificates of deposit totaling $31,-379.98, because the bank had failed to demonstrate the existence of the fourth claimed certificate of deposit or that it had perfected its claim in the two trucks that ostensibly secured the second note. Even though the note amounts had been reduced by payments preceding the bankruptcy petition, the bankruptcy court determined that evidence showed that the certificates of deposit were insufficient to pay off the notes. Consequently, the bankruptcy court concluded the notes were under secured, and payments made by the corporation to the bank within 90 days of the bankruptcy petition were preferential. The bank has not succeeded in demonstrating that the bankruptcy court's determination that the loans were under secured is clearly erroneous.

The remaining issues on appeal center around 11 U.S.C. §§ 547 and 550. Section 550 provides in pertinent part:

Liability of transferee of avoided transfer

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

(c) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

The bankruptcy court concluded that the bank qualified as an initial transferee under section 550(a)(1) and did not qualify for the good faith defense of section 550(b)(1). The bankruptcy court explained its decision as follows:

The court believes Carlos Foster's testimony that he asked for the loans to be made to C–L Cartage but the bank refused. The bank's vice-president testified that C–L Cartage did not submit written loan applications. Obviously, Carlos Foster would not have submitted written loan applications on behalf of

---

**1.** The latter view appears to the Court the most logical way to view the underlying transaction. The bankruptcy court clearly rejected viewing Mr. Foster's transfer of the loan proceeds to C–L

Cartage as a gift or capital contribution he did not intend to be repaid either to him or the bank.

C–L Cartage after the bank had already turned it down. The bank knew that the loans to Carlos Foster were really loans to C–L Cartage.

The court can assume that the bank does not refuse to make loans to all corporations without regard to their financial condition. It may prefer to have as the debtor a real live person, rather than the legal fiction of a corporation, but that can be accomplished by making the loan directly to the corporation and obtaining the co-signature or guarantee of a corporate officer or anyone else willing to pay the debt on the corporation's behalf. It appears that the bank made the loans to Carlos Foster to avoid having the debt owed by the intended beneficiary of the loans, C–L Cartage, because it was less likely to be able to pay the debts. Making the loans to Carlos Foster was nothing more than a means for the bank to make the loans to C–L Cartage and hopefully avoid the risks that might result from C–L Cartage's financial condition. One such risk was the recovery of preferential payments received from C–L Cartage, if it later went into bankruptcy, and the loans had been made to C–L Cartage. The court does not think the bank could avoid this risk by the simple expedient of making the loans to C–L Cartage through Carlos Foster, as the debtor rather than a co-signer or guarantor. Bank lending officers probably are not always thinking of ways to avoid problems that might result from the bankruptcy of a corporate borrower. The court, however, sees no good reason to allow such an easy method of protecting preferential payments received from a corporate debtor that the lender knew was the intended beneficiary of a loan it made through a third person for the purpose of avoiding problems that might result from the corporation's dim financial prospects.

The court concludes that the trustee can recover from the bank as the initial transferee of the payments that were preferential to Carlos Foster and his mother but were not preferential to the bank, assuming it was not a creditor.

The bank argues that the bankruptcy court erred in this determination. According to the bank, it "is entitled to the protection of [550(b)(1)] . . . since it extended value in the form of cancellation of indebtedness in good faith without knowledge of the voidability of the transfer."

■ The bankruptcy court's determination that the bank is not entitled to good faith transferee status is, however, fully supported by the record. The bankruptcy court expressly found that the bank "knew that the loans to Carlos Foster were really loans to C–L Cartage" and structured the loans as it did to "avoid the risks that might well result from C–L Cartage's financial condition." Consequently, the bank cannot be said to have acted without notice or in good faith and section 550(b)(1) does not apply.

The final challenges to the decision of the bankruptcy court come from the trustee. Although the bankruptcy court allowed the trustee to recover payments made by C–L Cartage. to the bank, the court limited that right of recovery to the ninety days preceding the bankruptcy. The trustee argues that he is entitled to all payments made within a year of the bankruptcy.

The trustee's argument is based on 11 U.S.C. §§ 547 and 550. Section 547, as already indicated, allows a trustee to avoid "any transfer of an interest of the debtor in property . . . to or for the benefit of a creditor . . . made . . . between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider. . . ."

As discussed above, the bankruptcy court determined that Mr. Foster and his mother were insider creditors of C–L Cartage, and as such, payments inuring to their benefit are avoidable preferences under section 547.

As the bankruptcy court noted, the Bankruptcy Code separates the avoidance of transfers from the trustee's right to recover. The "critical issue," then, "is whether the trustee can recover from the non-creditor bank that received payments." The

trustee's right to recover is governed by section 550.

■ The bankruptcy court determined that "[a] literal reading of §§ 547(b)(1) and 550(a)(1) would allow the trustee to recover preferential payments to a non-insider creditor [the bank] made more than 90 days but within a year before bankruptcy if the payments also preferred an insider [Mr. Foster]." The bankruptcy court rejected this literal interpretation and allowed recovery of only those payments made within 90 days. The trustee contends that was error.

The Court cannot say that bankruptcy court's decision to limit recovery to those payments made within 90 days was inappropriate under the facts of this case. As one commentator has noted:

[I]f a transfer is made to a creditor who is not an insider more than 90 days but within one year before bankruptcy and the effect is to prefer an insider guarantor recovery should be restricted to the guarantor and the creditor should be protected. Otherwise, a creditor who does not demand a guarantee can be better off than one who does.

4 *Collier on Bankruptcy* ¶ 550.02. Although there is case support for the position advanced by the trustee, *see, e.g., In re Big Three Transp., Inc.*, 41 B.R. 16 (Bankr. W.D.Ark.1983), the bankruptcy court was acting well within its powers and the Bankruptcy Rules in limiting the trustees right of recovery from the bank to payments made within 90 days. *See In re V.N. Deprizio Const. Co.*, 58 B.R. 478 (Bankr.N.D. Ill.1986).

This case involved a complicated factual situation and a careful balancing of equitable considerations. The decision reached by the bankruptcy court is neither unfair nor contrary to law. Accordingly, the decision of the bankruptcy court will be in all respects AFFIRMED.

An appropriate order shall enter.