950 F.2d 1187
 60 USLW 2527, 26 Collier Bankr.Cas.2d 682,
Bankr. L. Rep. P 74,448
 In the Matter of T.B. WESTEX FOODS, INC., Debtor.
T.B. WESTEX FOODS, INC., Appellant,
v.
FEDERAL DEPOSIT INSURANCE CORP., in its Corporate Capacity
as Liquidator of the Alaska Continental Bank, Appellee.
 No. 90-8356.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 24, 1992.
 
 R. Mike Borland, Borland & Borland, Midland, Tex., for appellant and debtor.
 Jaclyn Tanner, Washington, D.C., for appellee.
 Appeal from the United States District Court for the Western District of Texas.
 Before HENLEY*, KING, and GARWOOD, Circuit Judges.
 GARWOOD, Circuit Judge:
 
 
 1
 T.B. Westex Foods, Inc. (Westex), a Chapter 11 debtor in possession, filed a complaint to compel turnover of avoidable preferential transfers under section 547(b) of the Bankruptcy Code made to Alaska Continental Bank (Alaska). The bankruptcy court found that the transfers were not avoidable under section 547(b) because they were not made within the applicable preference period and they did not benefit an insider. 96 B.R. 77. The bankruptcy court also found that even if the transfers were avoidable, Westex could not obtain recovery from Alaska under section 550(a) of the Bankruptcy Code. The district court affirmed solely on the latter ground. We find that the transfers were avoidable and that Westex can obtain recovery from Alaska. We accordingly reverse and remand for a determination of the proper amount of recovery.
 
 Facts and Proceedings Below
 
 2
 Wayne Bond (Bond), president, and a director and shareholder, of Westex, was indebted to Alaska. Westex was indebted to Bond. Alaska obtained a judgment against Bond and sought to enforce that judgment through a Texas court garnishment action against Westex.
 
 
 3
 Alaska served Westex with a writ of garnishment on January 6, 1987. The writ indicated that it applied to all sums which Westex owed to Bond. Westex did not respond to service of the writ and Alaska obtained a default judgment against Westex on April 14, 1987. The amount of the default judgment was $139,864.48--the amount of Bond's debt to Alaska as alleged in the garnishment.[1]
 
 
 4
 On November 13, 1987, Alaska attempted to enforce its judgment against Westex by serving a writ of garnishment on two banks in which Westex had funds on deposit. The banks interpleaded Westex's deposits, which amounted to a total of $37,734.60, the amount at issue in this appeal.
 
 
 5
 On March 11, 1988, Westex filed for protection under Chapter 11 of the Bankruptcy Code. During the pendency of the Westex Chapter 11 proceeding, Alaska was declared insolvent and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver for the failed bank. The FDIC acquired Alaska's interest in the garnished funds.[2]
 
 
 6
 Westex filed a motion in the bankruptcy court, as debtor in possession, to compel turnover of the funds garnished by Alaska.[3] Westex claimed that the garnishment of the funds constituted an avoidable transfer under 11 U.S.C. § 547(b). Section 547(b) provides as follows:
 
 
 7
 "(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
 
 
 8
 "(1) to or for the benefit of a creditor;
 
 
 9
 "(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 
 
 10
 "(3) made while the debtor was insolvent;
 
 
 11
 "(4) made--
 
 
 12
 "(A) on or within 90 days before the date of the filing of the petition; or
 
 
 13
 "(B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider, and
 
 
 14
 "(5) that enables such creditor to receive more than such creditor would receive if--
 
 
 15
 "(A) the case were a case under chapter 7 of this title;
 
 
 16
 "(B) the transfer had not been made; and
 
 
 17
 "(C) such creditor received payment of such debt to the extent provided by the provisions of this title."
 
 
 18
 Avoidable transfers are recoverable by the trustee under 11 U.S.C. § 550(a). Section 550(a) provides as follows:
 
 
 19
 "(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
 
 
 20
 "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
 
 
 21
 "(2) any immediate or mediate transferee of such initial transferee."
 
 
 22
 Westex sought recovery from Alaska as the initial transferee of the garnished funds (the $37,734.60).
 
 
 23
 The bankruptcy court denied Westex's motion to compel turnover of the garnished funds because Westex failed to prove all of the elements of section 547(b). The court found that Westex was insolvent at all relevant times and that Bond was an insider with respect to Westex.[4] The court therefore concluded that the applicable preference period was ninety days to one year before the bankruptcy filing pursuant to section 547(b)(4)(B).
 
 
 24
 The court found, however, that the other elements of section 547(b) had not been proved. First, the court appeared to find that Bond had not benefited from the transfer within the meaning of sections 547(b)(1) and 547(b)(5). The court reasoned that Westex would have an equitable right of indemnity against Bond, or would become the subrogee of Alaska's judgment against Bond, for the amount of Westex's payment to Alaska. The court therefore concluded that Bond did not benefit from Alaska's satisfaction of its judgment against Westex.
 
 
 25
 Second, the court found that the relevant transfer had occurred more than one year before the filing of bankruptcy. The court concluded that the service of the writ on Westex on January 6, 1987 perfected Alaska's lien on Westex's assets and that the relevant transfer occurred on that date. The court therefore held that the transfer could not constitute an avoidable preference because it occurred more than one year before Westex filed for bankruptcy.
 
 
 26
 Finally, the court held that even if all of the requirements of section 547(b) had been satisfied, it would have denied Westex recovery against the noninsider Alaska. The court reasoned that it would have been inequitable to allow recovery to Westex under section 550(a)(1) where the initial transferee was a noninsider such as Alaska.
 
 
 27
 Westex appealed to the district court, which affirmed the bankruptcy court's judgment on the sole ground that to allow Westex to recover from Alaska would be inequitable. The district court based its holding on the reasoning of courts which had denied recovery from a noninsider where the transfer to the noninsider had qualified as an avoidable preference only because the insider was a guarantor of the debt collected from the bankrupt debtor.
 
 Discussion
 A. Introduction
 
 28
 Westex bears the burden of proving by a preponderance of the evidence every essential element of section 547(b) in order to avoid a preferential transfer.[5] 11 U.S.C. § 547(g); see 4 Collier on Bankruptcy p 547.21 (15th ed. 1991). Westex therefore must prove that (1) there was a transfer to Alaska for the benefit of a Westex insider creditor (Bond), (2) on account of an antecedent debt (Westex's debt to Bond), (3) made while Westex was insolvent and (4) within one year of the date of the filing of the Westex bankruptcy petition (5) that enabled Bond to receive more than he would have under a Chapter 7 liquidation.
 
 
 29
 That Westex has proved some of the elements of section 547(b) is undisputed. Alaska does not contest the bankruptcy court's findings that a transfer of property from Westex to Alaska occurred, that Westex was insolvent at the time of the transfer, and that Bond was then an insider. It is also undisputed that Bond was a creditor of Westex at the time of the transfer[6] and that Westex's obligation to Bond was an antecedent debt on account of which the transfer was made.
 
 
 30
 The disputed elements are the following. Westex challenges the bankruptcy court's findings that Bond did not benefit from the transfer and that a transfer did not occur within one year of the date of the filing of the Westex bankruptcy petition. Westex further claims that section 550(a)(1) provides for recovery from the initial transferee of the avoidable transfer regardless of that transferee's status as a noninsider.
 
 
 31
 We have previously stated that "[f]indings of fact made by a bankruptcy court will not be set aside unless clearly erroneous. In other words, this Court will reverse only 'when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed.' " New Orleans Pub. Serv., Inc. v. First Federal Sav. & Loan Ass'n of Warner Robins, Ga., 924 F.2d 74, 76 (5th Cir.1991) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). "Conclusions of law, conversely, are subject to plenary review on appeal." Id.
 
 
 32
 B. When Did the Transfer Occur?
 
 
 33
 Section 547(b) empowers Westex to avoid the transfer from Westex to Alaska if it occurred during the insider preference period, between ninety days and one year before the date on which Westex filed for bankruptcy. If the relevant transfer occurred on January 6, 1987, as Alaska claims, the transfer is not avoidable, for Westex filed for bankruptcy on March 11, 1988, more than one year later.
 
 
 34
 The Bankruptcy Code provides that "a transfer is made--(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time; (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days...." 11 U.S.C. § 547(e)(2). The Code also states that "a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(B). We find that Alaska perfected its interest in Westex's referenced bank accounts when, but not before, it served a writ of garnishment on those accounts in November 1987, within one year of Westex's filing for bankruptcy.
 
 
 35
 In bankruptcy, the existence and power of a garnishment lien is controlled by state law. Phillips v. MBank Waco, N.A. (In re Latham), 823 F.2d 108, 110 (5th Cir.1987). Texas courts have stated that the garnishor is to be treated as if he stood in the shoes of the garnishment debtor. Beggs v. Fite, 130 Tex. 46, 106 S.W.2d 1039, 1042 (1937); RepublicBank Dallas v. National Bank of Daingerfield, 705 S.W.2d 310, 311 (Tex.Ct.App.1986). "That is, the garnishor ... may enforce whatever rights the debtor could have enforced had such debtor been suing the garnishee directly." RepublicBank Dallas, 705 S.W.2d at 311.
 
 
 36
 In order for Bond to enforce his claim against Westex, he would be required to obtain a judgment and then execute against Westex's assets by serving a writ of garnishment on Westex's bank accounts. Only by taking these steps could Bond perfect an interest in those accounts. Alaska therefore cannot be deemed to have perfected an interest in the accounts merely by serving a writ of garnishment on Westex. Alaska, like Bond, must first obtain a judgment against Westex and effect execution (or other process) before it can perfect an interest in the accounts. Otherwise, Alaska as garnishor would be placed in a better position than Bond. Alaska served the writ of garnishment on Westex's banks on November 13, 1987, thereby effecting a transfer under section 547(b) within one year of Westex's filing for bankruptcy.
 
 
 37
 Alaska contends that it perfected an interest in Westex's bank accounts through the January 6, 1987 service of the writ of garnishment on Westex. Alaska relies on the rule in Texas that "the service of a writ of garnishment creates a lien on property subject to such writ of garnishment from the date of the service of the writ." United States v. Standard Brass & Mfg., 266 S.W.2d 407, 408 (Tex.Civ.App.1954); see Phillips, 823 F.2d at 110. Alternatively, Alaska adopts the bankruptcy court's conclusion that the earlier garnishment perfected Alaska's interest in Westex's bank accounts because "[t]he later garnishment actions were merely attempts to enforce the original writ or garnishment."
 
 
 38
 We hold that Westex's bank accounts cannot reasonably be considered "property subject to such writ of garnishment" (the writ served on Westex in January 1987). Alaska contends, in effect, that service of a writ of garnishment is sufficient to perfect an interest in any property belonging to a garnishee that could conceivably be applied to repayment of a garnishee's obligation to the garnishment debtor. Alaska refers this Court to no authority in support of this proposition.
 
 
 39
 Cases relied on by Alaska involved situations in which the property of (or owed to) the garnishment debtor had been specifically identified pursuant to service of the writ of garnishment. See, e.g., Phillips, 823 F.2d 108 (garnishment of garnishment debtor's trust held by bank); Askin Marine Co. v. Conner (In re Conner), 733 F.2d 1560 (11th Cir.1984) (obligation to garnishment debtor paid into clerk of court by garnishee); Gouveia v. McCowen (In re Coppie), 728 F.2d 951 (7th Cir.1984) (garnishment of garnishment debtor's wages), cert. denied, 469 U.S. 1105, 105 S.Ct. 777, 83 L.Ed.2d 772 (1985); Riddervold v. Saratoga Hosp. (In re Riddervold), 647 F.2d 342 (2d Cir.1981) (income execution); Standard Brass, 266 S.W.2d 407 (obligation to garnishment debtor paid into clerk of court by garnishee). In the instant case, Alaska's service of the January 1987 writ of garnishment did not lead to the identification or interpleading of specific assets owed under the garnishee's debt to the garnishment debtor.[7]
 
 
 40
 As noted, "the service of a writ of garnishment creates a lien on property subject to such writ of garnishment from the date of the service of the writ." Standard Brass, 266 S.W.2d at 408 (emphasis added). Prior to Alaska's service on the banks of the November 1987 writs, no property subject to the writ's power had been specifically identified. It is for this reason that Alaska found it necessary to obtain judgment against Westex and then to enforce that judgment by means of service of the November 1987 writs of garnishment on the banks in which Westex had its accounts. The November 1987 writs of garnishment did not operate to enforce the January 1987 garnishment attempt, but rather operated to enforce Alaska's April 1987 judgment against Westex.
 
 
 41
 C. Did Bond Benefit from the Transfer?
 
 
 42
 Westex cannot avoid the transfer to Alaska unless the transfer benefited Bond and enabled him to receive more than he would have received if Westex had been liquidated under Chapter 7. 11 U.S.C. §§ 547(b)(1) & (5). The bankruptcy court appears to have found that Bond did not benefit by way of the transfer from Westex to Alaska because Westex would have had an equitable right of indemnity against Bond, or would have become the subrogee of Alaska's judgment against Bond, for the amount of Westex's payment to Alaska.
 
 
 43
 We hold that the bankruptcy court's conclusion that Westex's transfer to Alaska would create in Westex a right of subrogation or indemnification against Bond is erroneous as a matter of law. Although Westex's payment to Alaska would pro tonto reduce Westex's debt to Bond, Bond would not otherwise thereby be liable to Westex for any part of Westex's payment to Alaska.[8]
 
 
 44
 Alaska appears to contend that although the garnishment reduced Bond's liability to Alaska, Bond nevertheless did not benefit from the transfer because his claim against Westex was commensurately reduced.[9] Alaska misunderstands the nature of the benefit received in this situation. An unsecured creditor's claim against a bankrupt debtor will rarely be worth one hundred cents on the dollar.
 
 
 45
 An unsecured creditor such as Bond would not have received the full amount of his claim under a Chapter 7 liquidation proceeding, but such a loss on his part would be averted if he received full value for a portion of his claim through Westex's payment to Alaska. Bond would benefit from the transfer to the entire extent that his debt to Alaska was reduced by Westex's transfer to Alaska, less the amount he would have received from Westex under Chapter 7 in respect to the amount so transferred.
 
 
 46
 D. Can Westex Recover from Alaska?
 
 
 47
 As noted above, we conclude that the bankruptcy court erred in finding that the transfer from Westex to Alaska was not an avoidable preference under section 547(b). It thus becomes necessary for us to address the bankruptcy court's conclusion, in which the district court concurred, that Westex nevertheless could not recover the transfer from Alaska under section 550(a)(1) because Alaska was not an insider.
 
 
 48
 Section 550(a)(1) provides that the debtor in possession can recover transfers avoidable under section 547 from the "initial transferee of such transfer or the entity for whose benefit such transfer was made." The bankruptcy court and the district court purported to exercise their equitable powers in disallowing recovery under section 550(a)(1) from a noninsider.
 
 
 49
 Both courts adopted the reasoning of a line of cases holding that a trustee cannot recover transfers as avoidable preferences made by a bankrupt debtor to a creditor within the insider preference period merely because the payments were made on an antecedent debt guaranteed by insiders of the debtor.[10] See generally, Note, The Interplay Between Sections 547(b) and 550 of the Bankruptcy Code, 89 Colum.L.Rev. 530 (1989). In each of these cases, the court found that the insider-guarantor was a creditor of the bankrupt debtor because the guarantor holds a contingent claim against the debtor that becomes fixed when the guarantor pays the outsider creditor whose claim was guaranteed. 4 Collier on Bankruptcy p 547.04. These courts nevertheless have relied on one or both of two theories in rejecting the trustee's claims.
 
 
 50
 The first theory treats the bankrupt debtor's transfer to the creditor as constituting two separate transfers for the purposes of section 547(b). See Mercon, 37 B.R. at 551-52 (cited approvingly in Kellogg v. Blue Quail Energy, Inc. (In re Compton Corp.), 831 F.2d 586, 593-94 (5th Cir.1987), modified on reh'g on other grounds, 835 F.2d 584 (1988)). The first transfer is from the debtor to the outsider creditor in satisfaction of the primary indebtedness. The second transfer is from the debtor to the guarantors in satisfaction of their contingent liability.
 
 
 51
 Under this theory, only the second transfer is an avoidable preference under section 547(b) because the first transfer, once separated from the second, does not itself benefit the insider guarantor. It follows that section 550(a), which by its terms applies only to avoidable transfers, cannot be expanded to provide for recovery from initial transferees of nonavoidable transfers. See id. at 552; Bakst, 19 B.R. at 844.
 
 
 52
 The second theory appears to have originated in a leading bankruptcy treatise, which argues as follows:
 
 
 53
 "In some circumstances, a literal application of section 550(a) would permit the trustee to recover from a party who is innocent of wrongdoing and deserves protection.... [For example], if a transfer is made to a creditor who is not an insider more than 90 days but within one year before bankruptcy and the effect is to prefer an insider-guarantor, recovery should be restricted to the guarantor and the creditor should be protected. Otherwise, a creditor who does not demand a guarantor can be better off than one who does." 4 Collier on Bankruptcy p 550.02 (footnotes omitted).
 
 
 54
 The majority of courts that have denied recovery from the outsider creditor have relied on this reasoning in applying their equitable powers to deny recovery from noninsider initial transferees. See, e.g., In re Aerco Metals, Inc., 60 B.R. at 81; Schmitt, 34 B.R. at 893; Bakst, 19 B.R. at 844.
 
 
 55
 In the instant case, neither court below adopted the two transfer theory, but both courts relied on the equity theory in holding that it would be inequitable to allow recovery from an initial transferee who is a noninsider. As stated by the district court, "[t]he Court does not wish to punish [Alaska] for the prudence it exercised in garnishing the Debtor's accounts." We do not find it necessary to determine the merits of either theory as we find neither to be applicable to the facts of this case.
 
 
 56
 Two transfers arguably take place in the situation where there is an insider-guarantor because there are two distinguishable obligations that are concurrently discharged. In the instant case, however, Westex's payment represents only one obligation: Westex's debt to Bond. Instead of paying Bond, Westex has simply paid a garnishor standing in Bond's shoes. The process of garnishment merely requires that Westex discharge its debt to Bond by paying Bond's creditor. Only one transfer occurs because the obligation that is discharged by way of the transfer is indivisible.
 
 
 57
 With respect to the equity theory, the asserted inequity of allowing recovery against the creditor who requires a guarantee from an insider before making a loan to a subsequently bankrupt debtor exists because repayment of the loan is thereby made less probable by the very act that was reasonably intended to make it more probable. The creditor is punished for its prudence, for it is the prudent requirement of a guarantee that creates the connection to the insider that triggers application of the extended insider preference period.
 
 
 58
 Alaska's situation is not wholly analogous to that of a creditor who has protected himself by requiring a guarantor. Such a creditor is worse off, in respect to collecting the debt owed it by the bankrupt, than if no guaranty had been obtained. But Alaska is clearly no worse off, in respect to collecting Westex's debt to it, by reason of serving the November 1987 garnishments on Westex's banks. Nor is it entirely clear that application of section 550(a)(1) against Alaska by reason of service of the November 1987 writs will necessarily disadvantage Alaska in respect to collection of Bond's debt to it, for it is not certain that Bond's indebtedness to Alaska will finally be reduced by more than Alaska was ultimately able to collect and retain from Westex under the April 1987 judgment.
 
 
 59
 In the insider-guarantor situation, the benefit to the insider does not exist independent of the obligation that the creditor seeks to enforce. In contrast, Westex's transfer to Bond is tainted, that is, the benefit to the insider is created, by the existence of an entirely independent obligation running from Bond to Alaska. Bond's debt to Alaska exists regardless of whether Alaska seeks to collect it from Westex or from another of Bond's debtors.
 
 
 60
 We find that the two transfer theory of section 547(b) and the equity theory of section 550(a) do not apply to the instant factual situation, and we accordingly turn to take a fresh look at the language of section 550. We find that the unambiguous language of this section allows for no other conclusion than that the avoidable transfer can be recovered from Alaska, the initial transferee.
 
 
 61
 Alaska claims that such a result does not serve the policy behind the extended insider preference period. Alaska states that the extended period was created "to prevent an insider from deliberately depleting the estate's assets in order to protect his own interests." See, e.g., Levit, 874 F.2d at 1195. Bond could not have deliberately effected the transfer to Alaska, Alaska argues, because the transfer was involuntary on Westex's part. Alaska appears to contend that where this asserted policy is not served, this Court should disregard the plain language of section 550(a) in deference to predominant principles of equity.
 
 
 62
 The purpose of a transfer is not dispositive of the question whether it qualifies as an avoidable preference under section 547(b) because "it is the effect of the transaction, rather than the debtor's or creditor's intent, that is controlling." 4 Collier on Bankruptcy p 547.01 (emphasis in original). The purpose of section 547(b) is to " 'facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor.' " Id. (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 177-78 (1977) (House Report), U.S.Code Cong. & Admin.News 6137-39 (1978)). The creditor's or debtor's " 'state of mind has nothing whatsoever to do with the policy of equality of distribution.' " Id. at p 547.01 n. 12 (quoting House Report at 178); see Matter of Hughes, 704 F.2d 820, 822 (5th Cir.1983); Barash v. Public Fin. Corp., 658 F.2d 504, 510 (7th Cir.1981). Alaska mistakenly treats the policy of preventing insiders from exploiting their position as the only goal of the extended insider preference period. The policy cited by Alaska is also intended to serve the larger goal of orderly and equal distribution of a debtor's assets in bankruptcy, a goal directly served by allowing recovery from noninsider initial transferees.[11] See Levit, 874 F.2d at 1194-95. Alaska has not demonstrated any sufficiently compelling equity to warrant deviation from the statutory scheme, even assuming, arguendo only, that in other contexts (e.g., the insider guarantor) such might be appropriate.
 
 E. Measure of Recovery
 
 63
 Our holdings that the November 1987 transfers from Westex to Alaska are avoidable and that they are recoverable from Alaska do not conclusively establish whether or what amount Westex will recover from Alaska. Section 547(b)(5) provides that the transfer is avoidable only to the extent that the benefit that the insider received from the transfer exceeded the amount that the insider would have received under a Chapter 7 distribution. Braniff Airways, Inc. v. Exxon Co., U.S.A., 814 F.2d 1030, 1034 (5th Cir.1987). The bankruptcy court on remand must determine the amount that Bond would have received on his claim against Westex under Chapter 7 in respect to the sums garnished in November 1987 and subtract that amount from the portion of such garnished funds credited against Bond's debt to Alaska.[12]
 
 Conclusion
 
 64
 We hold that Westex effected transfers to Alaska within the insider preference period and that the transfers were preferential and therefore avoidable under section 547(b) of the Bankruptcy Code. We also hold that the transfers, to the extent so avoidable, can be recovered from Alaska as the initial transferee under section 550(a)(1). Accordingly, the district court's decision is REVERSED and the cause is REMANDED for a determination of the proper amount of recovery.
 
 
 65
 REVERSED and REMANDED.
 
 
 
 *
 Circuit Judge of the Eighth Circuit, sitting by designation
 
 
 [1]
 The Texas Rules of Civil Procedure provide that if the garnishee fails to file an answer to a writ of garnishment within the allotted time the court can enter a judgment of default against the garnishee in the full amount of the garnishor's judgment against the garnishment debtor. Tex.R.Civ.P. 667 (1991)
 
 
 [2]
 For the sake of clarity, we hereinafter refer to the appellee as "Alaska."
 
 
 [3]
 The debtor in possession is empowered to assume the functions and duties of a trustee, with certain exceptions not relevant to the instant dispute. 11 U.S.C. § 1107(a)
 
 
 [4]
 An insider includes, "[I]f the debtor is a corporation--(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor...." 11 U.S.C. § 101(31)(B)
 
 
 [5]
 A debtor is presumed to have been insolvent on and during the ninety days immediately preceding the date of the bankruptcy filing. 11 U.S.C. § 547(f). This presumption is not applicable in the instant case, for no transfer is alleged to have occurred within the ninety-day preference period
 
 
 [6]
 Although the amount of Westex's debt to Bond was not determined in either court below, at no point in this litigation has Alaska questioned Bond's status as a creditor of Westex. Although Bond stated at the hearing before the bankruptcy court that Alaska had obtained a judgment against Westex for a debt that Westex did not owe, thereby implying that Westex was not actually indebted to Bond, Alaska's counsel twice frustrated attempts by the bankruptcy court and Westex's counsel to determine whether Westex was, in fact, indebted to Bond. Alaska concedes in its brief that Westex was indebted to Bond and Alaska nowhere suggests that the service of the writ of garnishment in January 1987, or the obtaining of the default judgment against Westex in November 1987, altered Bond's status as a creditor of Westex. We therefore find that Bond was a creditor of Westex at the time of the transfer and do not address this issue further
 
 
 [7]
 Our interpretation of the law of garnishment is consistent with the treatment of garnishment as a quasi in rem proceeding. See United States Rubber Co. v. Poage, 297 F.2d 670, 673 & 673 n. 5 (5th Cir.1962) (" 'In every practical sense, [garnishment] amounts to a seizure of the thing.' " (quoting Pennsylvania R. Co. v. Rogers, 52 W.Va. 450, 44 S.E. 300, 302 (1903))). The proceeding is operative in personam against the garnishee to prevent him from paying the debt to the garnishment debtor and "is operative in rem upon the property of the defendant debtor in the hands of the garnishee." Citizens Nat'l Bank in Ennis v. Hart, 321 S.W.2d 319, 320-21 (Tex.Civ.App.1959) (emphasis added)
 
 
 [8]
 A possibly arguable exception to this might apply to the extent (if any) that Westex's transfer to Alaska exceeded the amount Westex owed Bond. We need not address such a scenario, however, because this was not Alaska's theory of the case factually or legally (see note 7, supra), there is no finding that the transfer to Alaska exceeded Westex's debt to Bond, and the judgment denied any recovery whatever to Westex under section 550(a)(1). Moreover, if the Westex transfer to Alaska exceeded what Westex owed Bond, this would have resulted solely from Westex's failure to respond to the January 1987 garnishment, and as that was the fault of Westex, rather than Bond, it appears questionable whether Bond would be liable on that account to Westex
 
 
 [9]
 Alaska also claims that Bond did not benefit because his debt to Alaska was discharged in Bond's own Chapter 7 proceeding. We find that this claim has no merit as Alaska concedes that Bond's obligation to Alaska was not discharged until after Westex filed for bankruptcy in March 1988. Bond's debt therefore was still operative when the transfer from Westex to Alaska occurred in November 1987 and when Westex filed under Chapter 11
 
 
 [10]
 See, e.g., In re Aerco Metals, Inc., 60 B.R. 77 (Bankr.N.D.Tex.1985); Goldberger v. Davis Jay Corrugated Box Corp. (In re Mercon Industs., Inc.), 37 B.R. 549 (Bankr.E.D.Pa.1984); Schmitt v. Equibank (In re Beck Builder, Inc.), 34 B.R. 888 (Bankr.W.D.Pa.1983); Bakst v. Schilling (In re Cove Patio Corp.), 19 B.R. 843 (Bankr.S.D.Fla.1982); Seeley v. Church Bldgs. & Interiors, Inc. (In re Church Bldgs. & Interiors, Inc.), 14 B.R. 128 (Bankr.W.D.Okla.1981). The courts below also relied on two other cases which were reversed on appeal on the ground that preferential transfers to noninsider creditors on account of an antecedent debt guaranteed by an insider were recoverable from the noninsider. Ray v. City Bank & Trust Co. (In re C-L Cartage Co.), 70 B.R. 928 (Bankr.E.D.Tenn.1987), aff'd, 113 B.R. 416 (E.D.Tenn.1988), aff'd in part, rev'd in part, 899 F.2d 1490 (6th Cir.1990); Levit v. Ingersoll Rand Financial Corp. (In re V.N. Deprizio Constr. Co.), 58 B.R. 478 (Bankr.N.D.), rev'd, 86 B.R. 545 (N.D.Ill.1988), aff'd in part, rev'd in part, 874 F.2d 1186 (7th Cir.1989). The only other Circuit Court to have directly addressed this issue, in addition to the Seventh and Sixth Circuits, is the Tenth, which also held that an avoidable transfer was recoverable from the noninsider creditor. Lowrey v. First Nat'l Bank of Bethany (In re Robinson Brothers Drilling, Inc.), 97 B.R. 77 (W.D.Okla.1988) (reversing bankruptcy court's denial of recovery of avoidable preference from noninsider on grounds of equity), aff'd, 892 F.2d 850 (10th Cir.1989) (adopting district court's opinion)
 
 
 [11]
 We also note that it would necessarily follow from Alaska's policy argument that an involuntary transfer occurring during the insider preference period could not be an avoidable preference, for if the only reason for the extended period is to prevent self-dealing by insiders, there would be no basis for avoiding involuntary transfers. Thus, Alaska's position is untenable, for the Bankruptcy Code expressly includes involuntary transfers in its definition of transfer for the purposes of all section 547(b) avoidable transfers. 11 U.S.C. § 101(54)
 
 
 [12]
 For this purpose, such a credit should not be reduced to take into account the effects (if any), as between Bond and Alaska, of Westex's recovery herein from Alaska under section 550(a)