In re SOUTHMARK CORPORATION,
Debtor.

SOUTHMARK CORPORATION,
Plaintiff,

v.

SOUTHMARK PERSONAL STORAGE,
INC. and First Nationwide Bank,
Defendants.

Bankruptcy No. 389–36324–SAF–11.

Adv. No. 391–3480.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Feb. 11, 1992.

Michelle E. Roberts, Thompson & Knight, P.C., Dallas, Tex., for Southmark Corp., debtor/plaintiff.

Craig L. Stahl, Bracewell & Patterson, Houston, Tex., for First Nationwide Bank, defendant.

John Weninger, Dallas, Tex., for Southmark Personal Storage, Inc., defendant.

## MEMORANDUM OPINION
## AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

On July 12, 1991, Southmark Corporation filed an adversary proceeding against Southmark Personal Storage, Inc. (SPS) and First Nationwide Bank (FNB) to avoid and recover allegedly preferential transfers under 11 U.S.C. § 547. On August 20, 1991, FNB moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Southmark seeks to recover from FNB $221,708 which Southmark paid to FNB in satisfaction of a debt it guaranteed on behalf of SPS. In its motion to dismiss, FNB contends that Southmark cannot establish that the payment was an avoidable preference under § 547(b). The court held a hearing on FNB's motion on November 12, 1991. Upon agreement, the parties submitted post-hearing written arguments.

■ A proceeding to determine, avoid or recover preferential transfers constitutes a core matter over which this court has jurisdiction to enter a final judgment or order. 28 U.S.C. §§ 157(b)(2)(F) and 1334.

### I.

FNB has moved to dismiss under Fed. R.Civ.P. 12(b)(6), made applicable to this adversary proceeding by Bankruptcy Rule 7012. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ To apply this test, the court must consider pleaded facts and reasonable inferences drawn from the pleaded facts in the light most favorable to Southmark. *American Waste & Pollution Control Company v. Browning–Ferris, Inc.*, 949 F.2d 1384 (5th Cir.1991). For purposes of this motion, the court must accept the facts as pleaded in the complaint as true. The court need not, however, accept Southmark's legal conclusions drawn from those facts. *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97 (5th Cir. 1974).

SPS is a wholly owned subsidiary of Southmark. At the time of the transfer subject to this complaint, Southmark owed SPS $4,267,789.40 on intercompany transfers.

On December 31, 1986, SPS borrowed $2,089,404 from FNB and signed a loan and security agreement. SPS pledged to FNB certain promissory notes originally issued by investors of Trinity Shores, Ltd. and Embassy Square Associates, Ltd. (partnerships) and made payable to the partnerships. These notes had previously been pledged by the partnerships to SPS.

Under the security agreement, if any of the notes were in default over 60 days, SPS was required to purchase those notes. On December 31, 1986, in connection with the FNB–SPS security agreement, Southmark guaranteed SPS's debt to FNB.

According to Southmark's original complaint, on December 9, 1988, pursuant to its 1986 guaranty, Southmark transferred $221,708 to an SPS account at FNB. In its response to FNB's motion to dismiss, Southmark amended this statement, stating that "for the purposes of Southmark's specific claim against FNB, Southmark asserts that the transfer was made directly to FNB." Under the SPS–FNB security agreement, this amount was used to repurchase some of the defaulted notes. FNB then returned those notes to SPS.

Southmark filed its petition for relief under Chapter 11 of the U.S.Bankruptcy Code on July 14, 1989.

### II.

Southmark alleges that the transfer of $221,708 was made to FNB within one year of the filing of Southmark's bankruptcy petition for the benefit of SPS, an insider creditor. Southmark contends that the transfer is a preference pursuant to 11 U.S.C. § 547(b) and can be recovered from

FNB under 11 U.S.C. § 550. The parties agree that FNB is not an insider of Southmark but that SPS, as a wholly owned subsidiary of Southmark, is an insider. 11 U.S.C. § 101(2) and (31). The parties further agree that the transfer occurred before 90 days before the date of Southmark's bankruptcy petition but between 90 days and one year before the date of the petition. 11 U.S.C. § 547(b)(4).

Section § 547(b) of the Bankruptcy Code provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Southmark must prove each of the five elements of § 547(b) in order to avoid the transfer to FNB. *In the Matter of T.B. Westex Foods, Inc.,* 950 F.2d 1187 (5th Cir.1992). Southmark must prove that (1) there was a transfer to FNB for the benefit of a Southmark insider creditor (SPS); (2) on account of an antecedent debt (Southmark's debt to SPS); (3) made while Southmark was insolvent and (4) within one year of the date of the filing of Southmark's bankruptcy petition (5) that enabled SPS to receive more than it would have

under a chapter 7 liquidation. *See T.B. Westex,* 950 F.2d at 1190.

First, the transfer must have been made to or for the benefit of a Southmark insider creditor. In Count II of its original complaint, Southmark alleged that the transfer was made "to or for the benefit of FNB." In its response to FNB's motion to dismiss, Southmark amended this assertion, contending that the transfer was made "for the benefit of SPS" because the transfer "reduced the amount owed by SPS to FNB." (Response to First Nationwide Bank's Motion to Dismiss and Brief in Support, p. 4).

 Southmark contends that SPS is a creditor of Southmark for purposes of § 547(b). SPS is a creditor of Southmark. An entity is a "creditor" if it holds a "claim" against the debtor. *Levit v. Ingersoll Rand Financial Corp. (In the Matter of Deprizio),* 874 F.2d 1186 (7th Cir.1989).

"Creditor" is defined at 11 U.S.C. § 101(10):

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor.

"Claim" is defined at 11 U.S.C. § 101(5):

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

At the time of the transfer, Southmark owed SPS $4,267,789.40 on intercompany transfers. However, SPS had no claim against Southmark on the $2,089,404 debt which was the subject of Southmark's guaranty to FNB and is the subject of Southmark's preference action against FNB.

Southmark argues that a "creditor" for purposes of § 547(b)(1) "can be a creditor that benefits from the transfer as well as the creditor initially receiving the transfer." Southmark contends that § 547(b)(1) does not distinguish between a creditor owed on Southmark's guarantee to FNB or

a creditor owed on the unrelated intercompany transfers between Southmark and SPS and that § 547(b)(1) requires only that the transfer "benefit" "a creditor."

Section 547(b)(1) cannot be read as broadly as Southmark urges. Although § 547(b)(1) provides that the transfer must be "to or for the benefit of a creditor," the definition of a creditor under § 101(5) and (10) must be read in the context of the specific provisions of § 547. As a creditor, SPS must have a right to payment from Southmark in bankruptcy. *Deprizio*, 874 F.2d at 1191. While SPS had a right to payment from Southmark on the intercompany transfers, SPS did not have a right to recover from Southmark on Southmark's guaranty to FNB. SPS was not a creditor based on a claim underlying the transfer challenged under § 547 in this complaint.

Southmark cannot isolate the provision of a "creditor" under § 547(b)(1) from the other provisions of the section. The section must be read as a whole consistent with its purpose as a specific component of the Code. *See United Savings Association of Texas v. Timbers of Inwood Forest Asso., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988).

■ Under § 547(b), to be a preference, the transfer must have been made on account of an antecedent debt. The Code defines a "debt" as a "liability on a claim." 11 U.S.C. § 101(11). As illustrated in *Westex*, 950 F.2d at 1190, in this case, that element refers to Southmark's debt to SPS. However, Southmark's debt to SPS arises from intercompany transfers of $4,267,-789.40, whereas, Southmark's debt to FNB arises from Southmark's guaranty to FNB under the SPS–FNB security agreement of $2,089,404. Southmark had a liability to FNB on its claim, the guaranty, but Southmark had no liability to SPS on the guaranty. Southmark's liability to SPS arose from SPS' right to payment, its claim, on the intercompany transfers. Southmark's transfer to FNB was not made for or on account of its liability to SPS on a claim of SPS.

Southmark concedes that Southmark's debt to SPS arises from a different source than the debt Southmark owed to FNB. SPS has no claim against Southmark on the $2,089,404 debt which was the subject of Southmark's guaranty to FNB. An "antecedent debt owed by the debtor" cannot be *any* antecedent debt owed by the debtor. If taken out of context of § 547(b), there is an "antecedent debt" owed by Southmark to SPS on the intercompany transfers. However, for purposes of § 547(b)(2), the transfer to FNB was not made "on account of an antecedent debt" owed by Southmark to SPS.

While each element of § 547(b) must separately be proved, these elements cannot be read in isolation from one another. To do so would defeat the purpose of the preference statute. By isolating the elements of § 547(b) Southmark's reading of the statute would defeat its purposes as set out in the House Committee Report:

A preference is a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankrupt estate. The purpose of the preference section is twofold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution. H.R.Rep. No. 95–595, p. 177–78

(1978); U.S.Code Cong. & Admin.News 1978, pp. 5787, 6137, 6138.

*Union Bank v. Wolas,* — U.S. —, 112 S.Ct. 527, 533, 116 L.Ed.2d 514 (1991).

As a result of the transfer to FNB, SPS did not receive a greater percentage of its claim against Southmark had the transfer not been made. SPS had no claim against Southmark that was reduced by the transfer. The transfer had no effect on the SPS claim based on the intercompany transfer. While SPS received a benefit from the transfer, it did not receive a benefit or payment based on or on account of its claim against Southmark. While FNB received a payment on its claim against Southmark, the transfer to FNB occurred outside the preference period for non-insiders. FNB can only be reached under 11 U.S.C. §§ 547 and 550, if the transfer constituted a preference for SPS.

SPS did not "race to the courthouse" in anticipation of receiving payment on its intercompany transfers and, more importantly, it could not "race to the courthouse" in anticipation of receiving payment on the guaranty between Southmark and FNB.

### III.

Southmark has brought this preference action against FNB alleging that the transfer to FNB benefitted SPS. Because SPS is not a "creditor" based on a claim underlying the challenged transfer who received or benefitted by the transfer "on account of an antecedent debt," the court need not address § 547(b)(3), (4) or (5). Because Southmark cannot prove the five elements of § 547(b), it cannot obtain a judgment avoiding the transfer. Because Southmark cannot obtain a judgment avoiding the transfer, it cannot recover against FNB under either § 547 or § 550. Because SPS is not a creditor of Southmark that benefitted as a result of a transfer on account of an antecedent debt owed by Southmark to SPS, the court need not consider the extensive issues raised by the parties concerning construction of § 547's transfer provision and the application of § 550. *See Deprizio, supra; Kellogg v. Blue Quail (In the*

*Matter of Compton),* 831 F.2d 586 (5th Cir.1987), *modified on other grounds,* 835 F.2d 584 (1988).

Based on the foregoing,

IT IS THEREFORE ORDERED that FNB's motion to dismiss is GRANTED.